IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-000242-M-KS

|  |  |  |
|---|---|---|
| CHRISTINE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | FEDERAL DEFENDANTS' |
| v. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | THEIR MOTION TO DISMISS FOR |
| | ) | IMPROPER VENUE AND FAILURE |
| | ) | TO STATE A CLAIM |
| | ) | |
| UNITED STATES DEPARTMENT, | ) | |
| DEPARTMENT OF JUSTICE, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

Federal Defendants United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), Pamela Bondi, Timothy Lang ("Lang"), Ernest Littner ("Littner"), Mark Jackson ("Jackson"), Wade Brashier ("Brashier"), and Joseph Mastrianna ("Mastrianna"), by and through the United States Attorney for the Eastern District of North Carolina, hereby submit this memorandum in support of their motion to dismiss in the above-captioned matter.

**<u>INTRODUCTION</u>**

Plaintiff Christine Thomas ("Plaintiff") filed this action pursuant to alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e17 (as amended) ("Title VII"), Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (1990) ("ADA"), Equal Pay Act, 29 U.S.C. 206(d) ("EPA"), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff's Complaint alleges that during time periods from May 2020 to November 2024, while employed by the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") in Washington, DC, she was harassed and retaliated against based on her sex, race, and disability status. D.E. 1 at 1-6. Plaintiff brings this action against the ATF and various supervisors pursuant to Title VII, ADA, EPA, and *Bivens*. *Id.* at 2-3. However, Plaintiff's claims fail for two reasons. First, venue is not proper in the Eastern District of North Carolina and the matter should be dismissed pursuant to Rule 12(b)(3). In addition, Plaintiff has failed to state any claim, and thus this matter should be dismissed under Rule 12(b)(6). Accordingly, for the reasons discussed below, the Court should grant the motion, thereby transferring the action, or in the alternative, dismissing this action with prejudice and entering judgment for the Federal Defendants.

**FACTS**

According to the allegations in Plaintiff's Complaint,[1] on August 18, 2019, Thomas ("Plaintiff") was hired by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Human Resource ("HR") Specialist for the Advanced Training Branch assigned to a duty station in Washington, DC.[2] D.E. 1 at 3, 16. From August 2019 to March 29, 2022, July 31, 2022, to March 26, 2023, and from December 6, 2023, to November 25, 2024, Plaintiff worked remotely from her home in North Carolina[3] as HR Specialist. *Id.* at 6, 16. It is unclear from the Complaint where she was working during the times in between. At all times relevant her supervisors were: Tsui (August 2019 – September 2020), Preister (September 2020 – December 2021), Jackson

---

[1] For purposes of this motion only, the allegations in the Complaint are deemed as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (explaining that courts accept the factual allegations as true at the motion to dismiss stage).

[22] Notably, the Complaint never identifies Plaintiff's duty station, even though where she is assigned is central to her claims. She does state that she began working for the ATF in their Washington, DC office. D.E. 1 at 16.

[3] Plaintiff's Complaint is inconsistent on where Plaintiff was working in North Carolina. See D.E. 1 at 6 ("from her home in Raleigh, NC"); *id* at 16 ("from her home in Knightdale, NC").

(January 2020 – November 2022),[4] Littner (November 2022 – January 2025), and Anderson (January 2025 – present). *Id.* at 19.

In February 2022, Plaintiff was diagnosed with depression and anxiety. *Id.* at 20. Plaintiff contends she "was always able to perform the essential functions of her position with or without a reasonable accommodation, but she requested an accommodation in order to help her to manage her disability." *Id.* at 20. During that same month, on February 17, 2022, Plaintiff requested information about remote work assignment from Jackson. This was in response to a "workplace planning and reentry email." *Id.* at 20.

On March 23, 2022, Plaintiff corresponded with Lang and Jackson about a remote work assignment. *Id.* at 20. After denial of this request, Plaintiff reached out to Employee Assistance Program ("EAP") for help. *Id.* at 21. On March 30, 2022, Plaintiff asked for a change in office schedule to accommodate medical appointments. *Id.* at 21. She was told to find someone to switch with and could not, so she had to take leave. *Id.* at 21-22. On April 29, 2022, Plaintiff contacted Carla Miller,[5] Associate Ombudsman about Jackson's alleged discriminatory treatment towards Plaintiff. *Id.* at 22.

> Specifically, Ms. Thomas told Ms. Miller that she was no longer comfortable going through her chain of command due to the way she had been treated and the anxiety and stress it was causing. She discussed the inequity of management's implementation of telework and remote work policies. She also pointed out that Jackson had been unprofessional in his criticism of her. Ms. Thomas asked the Ombudsman to attend a meeting with her superiors and her. Both Jackson and Brashier either refused or cancelled the joint meeting.

---

[4] Further inconsistency in the Complaint regarding Plaintiff's supervisors. Later in the Complaint, she states that "Brashier became [Plaintiff's] immediate supervisor" [D.E. 1 at 23] despite not including him in her list of supervisors.

[5] The Complaint references individuals without identifying who they are, or how they relate to Plaintiff's chain of command, or their relevance to Plaintiff's the allegations. This lack of explanation further contributes to the insufficiency of the pleading.

*Id.* at 22. From May 5, 2022 to June 2, 2022, Plaintiff complained about discrimination to Acting Assistant Deputy Director Vince Pallozi.[6] *Id.* at 22-23. On June 1, 2022, Jackson requested a meeting with Plaintiff. *Id.* at 24. At the subsequent June 2, 2022 meeting, Lang and Jackson "interrogated" Plaintiff about her "living situation." They asked her about leave requests and "criticized" Plaintiff for making accommodation and leave requests. *Id.* at 24. That same day, Plaintiff contacted Palozzi. *Id.* at 24. She informed him: "'I had a very disturbing meeting with Mark Jackson and Timothy Lang that I found to be very hurtful. The information I provided to them when I was asking for their help is now being used against me and I feel as though my job is in jeopardy despite my outstanding evaluations and honesty.' It was the second time she had reported discrimination to Pallozzi." *Id.* at 24.

The next day, June 3, 2022, Plaintiff requested a remote work position based on personal financial hardship from Jackson. *Id.* at 24. On July 11, 2022, the remote work request was denied by Jackson and acting AD Lisa Boykin.[7] *Id.* at 25. On July 11, 2022, Plaintiff requested an explanation and filed a complaint with Carla Miller. *Id.* at 25. The next day, July 12, 2022, Plaintiff was granted a remote work assignment as reasonable accommodation because of the commute. *Id.* at 31. On July 13, 2022, Plaintiff applied for telework agreement to allow her to work from Raleigh.[8] *Id.* at 25. In addition, on July 14, 2022, Plaintiff requested reasonable accommodation using DOJ 100A form for her anxiety. *Id.* at 25.

On an unspecified date, Plaintiff emailed Lang, Jackson, and Whitney Proctor[9] to inform them of her disability and to ask for the accommodation of being remote full time. *Id.* at 26. On

---

[6] Again, the Complaint does not give any context to who this person is.
[7] Again, Plaintiff does not plead who Boykin is or her relevance.
[8] Here, Plaintiff alleges she asked for a "telework agreement to allow her to work out of Raleigh." D.E. 1 at 25. She does not explain whether this request was to permit her to work from her home.
[9] *See* footnote 7.

July 18, 2022, Plaintiff was placed in teleworking detail in North Carolina for 8 weeks.[10] *Id.* at 22. On July 25, 2022, Plaintiff emailed Lang that "[i]t was my understanding that the interim solution for me to temporarily work out of Raleigh was until a reasonable accommodation or hardship was approved." *Id.* at 26. The same day, Lang responded via email that a "hardship" is the way Plaintiff should approach her needs. *Id.* at 26-27. The Complaint does not explain any of the differences between remote, telework, and hardship situations.

On September 15, 2022, Plaintiff got doctor's note recommending remote work and her inability to commute was accepted as a reason for a temporary remote work reasonable accommodation. *Id.* at 28, 30. The next day, September 16, 2022, Plaintiff submitted doctor's note in support of leave and reasonable accommodation request. *Id.* at 28. On September 22, 2022, Jackson submitted a memo to Assistant Director, HRPD[11] about Plaintiff's proposed remote work agreement. According to Plaintiff, the memo included negative comments about Plaintiff and said that Jackson denied the remote work request because Plaintiff did not file hardship request and had an attitude. *Id.* at 29. The same day, Lang submitted memo concurring with Jackson's denial of Plaintiff's remote work request. *Id.* at 29. Also on September 29, 2022, Defendant Brashier[12] instructed Plaintiff to provide additional documentation for her reasonable accommodation request. *Id.* at 30. And Whitney Proctor[13] requested additional medical documentation from Plaintiff. *Id.* at 31.

Plaintiff then avers that from October 9, 2022, to March 27, 2023, while working in North Carolina, she received lower locality pay than when she worked in DC. *Id.* at 32. On October 10,

---

[10] This is the only reference in the Complaint Plaintiff being officially assigned to telework in North Carolina.

[11] The Complaint references HRPD throughout but does not explain what this acronym stands for or its relevance.

[12] Plaintiff does not specify Brashier's role in September 2022. She only states that he "had been in her chain of command for approximately three weeks." D.E. 1 at 32.

[13] *See* footnote 9.

2022, Plaintiff reported her unfair treatment, the denials of remote work and reasonable accommodations, and adverse actions by Lang and Jackson to Assistant Director Dent.[14] *Id.* at 32-33. The next day, October 11, 2022, Jackson denied Plaintiff's second request for remote work citing her attitude and failure to file a hardship request. *Id.* at 33-34. On October 12, 2022, Dent sent Plaintiff email with procedure to appeal the remote work denial. *Id.* at 34.

On October 13, 2022, Plaintiff requested that Carla Miller join a meeting with Jackson and Brashier. Jackson and Brashier repeatedly cancelled the meeting. *Id.* at 34. On October 17, 2022, Plaintiff appealed her September 22, 2022 denial to the grievance official. *Id.* at 34. On October 21, 2022, Plaintiff obtained more documentation from her doctor. *Id.* at 34. On October 24, 2022, Plaintiff filed an Administrative Complaint of ADA discrimination and retaliation with ATF. *Id.* at 4, 35. The next month, on November 6, 2022, Dent approved a remote detail for Plaintiff. *Id.* at 35. Plaintiff had a new first-line supervisor, Littner, from November 7, 2022 to January 10, 2025. *Id.* at 19. On November 11, 2022, Plaintiff's reasonable accommodation request was denied. *Id.* at 36.

On January 27, 2023, Littner sent an email to Plaintiff cancelling her work detail and ordering her to the DC office at 7:00 a.m. on January 30. *Id.* at 37. He also gave her deliverables for the January 30th date. Plaintiff contends she did not receive the email until January 30th because of her work hours. During this same period, on January 29, 2023, Acting A.D. Morrow responded to her November 15, 2022 request and rejected the remote work request. *Id.* at 36. Then,

> On January 30, 2023, at 8:30am, Ms. Thomas and Mr. Linter had a meeting, yet 9:38am, Mr. Lintner sent an email to Ms. Thomas demanding the deliverables. Ms. Thomas replied that she needed time to research and respond to his request and asked to respond by COB. At 11:05 am, Mr. Lintner threatened to mark Ms. Thomas as AWOL for the pay period if she did not respond to his request by 11:30a Ms. Thomas emailed a partial response at 11:52 a.m. informing him that she

---

[14] No explanation of who this is or what his role is in Plaintiff's chain of command.

believed that his actions toward her were threatening and intimidating. She sent a full response by the end of the day.

*Id.* at 37-38. The next day, January 31, 2023, Plaintiff was issued disciplinary letter for not responding to Littner's email demands from January 30th. *Id.* at 38.

On February 6, 2023, Plaintiff filed an Administrative Complaint of Race, Sex, and Disability Discrimination and Hostile Work Environment with ATF. *Id.* at 4-5. On March 7, 2023, Claims were "accepted" by the ATF. *Id.* at 5. On April 10, 2023, Plaintiff alleges she received notice that she had been removed from assignments by Lintner but does not plead when she was removed nor what it meant to be removed. *Id.* at 35.

On April 11, 2023, Plaintiff applied for a HR Specialist/Training Manager position with ATF and was informed she it was not hired for the position on July 10, 2024. *Id.* at 43. Previously, on May 2, 2023, Plaintiff and a co-worker were "verbally attacked" by Program Manager Anderson[15] during an in-person meeting. *Id.* On May 10, 2023, Plaintiff filed a grievance request in response to the denial of her remote work request. *Id.* at 43. The next day, May 11, 2023, Plaintiff submitted a hardship request to be transferred to North Carolina to Lintner. *Id.* at 43. It was denied on May 24, 2023. *Id.* at 44.

On July 13, 2023, ATF initiated an internal investigation of Plaintiff regarding allegations of personal misconduct. *Id.* at 44. On August 2, 2023, Plaintiff's hardship request was denied.[16] *Id.* at 45. On August 4, 2023, Plaintiff alleges she a panic attack at work. *Id.* at 45. She requested telework but Lintner would only approve leave. *Id.* at 45.

On October 17, 2023, Plaintiff filed an Administrative Complaint with "Defendant" "alleging sex and race discrimination resulting from the improper classification of a group of

---

[15] Plaintiff does not explain Anderson's relation to her or his relevance to her allegations in 2023. Anderson become Plaintiff's manager in January 2025. D. E. 1 at 48.
[16] The Complaint is unclear as to which hardship request was denied.

predominantly white and male employees performing the same work as Plaintiff as law enforcement which resulted in higher salary and additional benefits denied to Plaintiff." *Id.* at 5. On September 8, 2023, Plaintiff's "claims" were accepted by ATF. *Id.* at 5. To date, more than 180 days since Plaintiff filed her complaint, no agency decision has been issued. *Id.*

## STANDARDS OF REVIEW

### A.      Motion to Dismiss Pursuant to Rule 12(b)(3).

Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." "This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391 (2006 ed., Supp. V). That provision states that "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." § 1391(a)(1) (emphasis added). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49 (2013). 28 U.S.C. § 1391 governs venue for Plaintiff's EPA and Bivens claims. *See, Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 103 (D.D.C. 2018)(holding 28 U.S.C. 1391(b) is venue statute in EPA claim), and *Strong v. United States*, 2024 WL 4957483, at *2 (D.S.C. Nov. 1, 2024), report and recommendation adopted, 2024 WL 4891234 (D.S.C. Nov. 26, 2024)(affirming 28 U.S.C. 1391(b) is venue statute in *Bivens* claim).  The venue statute provides that the proper venue for a plaintiff to pursue a claim lies in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

However, for her Title VII and ADA causes of action, venue is determined differently. Unlike the general statute, 28 U.S.C. § 1391, Title VII limits venue to four possibilities: (1) the judicial district where the alleged unlawful employment practice occurred; (2) the district where relevant employment records are maintained and administered; (3) the district where the plaintiff would have worked but for the alleged unlawful practice; or, (4) if the defendant cannot be found in any of those districts, the district where the defendant has its principal office. 42 U.S.C. § 2000e-5(f)(3). These same rules apply to ADA and Rehabilitation Act cases. *Archuleta v. Sullivan*, No. 91-2029, 1991 WL 179071, at \*3 n.3 (4th Cir. Sept. 13, 1991). Courts within the Fourth Circuit have recognized that this specific statutory venue rule governs to the exclusion of the general venue provisions. See *Taylor v. Shreeji Swami, Inc.*, 2014 WL 1047358, at \*2 (W.D.N.C. Mar. 18, 2014).

"In reviewing a motion to transfer [venue], [the] [c]ourt may consider evidence outside the pleadings." *Siemens Energy, Inc. v. CSX Transp., Inc.*, 2016 WL 1059261, at \*2 n.2 (D. Md. Mar. 17, 2016); *see also Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, 2010 WL 3719503, at \*1 (W.D.N.C. Sept. 17, 2010) ("Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings").

### B. Motion to Dismiss Pursuant to Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when it contains factual allegations that permit the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. Although a court must take all factual allegations as true for purposes of a Rule

12(b)(6) motion, the court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court "need not accept factual allegations that constitute nothing more than legal conclusions or naked assertions." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, L.L.C.*, 713 F.3d. 175, 182 (4th Cir. 2013) (internal quotation marks omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A motion to dismiss pursuant to Rule 12(b)(6) turns on the allegations as set forth in the complaint itself, and courts are generally confined to that, except in a few narrow instances. *See United States ex rel. Oberg v. Penn Higher Educ. Assist. Agency*, 745 F.3d 131 (4th Cir. 2014). The court may consider exhibits to pleadings and documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013) (in addition to the complaint, the court may also consider documents incorporated by reference in the complaint and matters subject to judicial notice).

## ARGUMENT

### A. Plaintiff's Complaint Should Be Dismissed for Improper Venue or Transferred to the Proper Venue

In support of venue in the Eastern District of North Carolina, Plaintiff alleges that

> Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the unlawful employment practices were predominantly committed in North Carolina and where this District Court is located, and the plaintiff did work and would have continued to work in this district but for the alleged unlawful employment practices of Defendants and because Defendant ATF has offices in this District and there is no other district that has a more substantial connection to the claim.

D.E. 1 at 4. However, Plaintiff's citation to only § 1391 is incorrect. As explained above, § 1391 governs venue for the *Bivens* and EPA claims, but not for the Title VII and ADA claims.

The rules governing venue for Title VII actions are found at 42 U.S.C. § 2000e–5(f)(3) and provide that such actions may be brought: (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. These are the same rules that govern venue for actions brought under the ADA. *See* 42 U.S.C. § 12117(a).

When a complaint alleges both Title VII claims and other federal causes of action, the Court must apply the venue provision specific to Title VII, 42 U.S.C. § 2000e-5(f)(3), to the Title VII counts and the general venue statute, 28 U.S.C. § 1391, to the remaining counts. *See Bowers v. Transp. Sec. Admin.*, 2015 WL 3442014, at *2 (E.D. Va. May 27, 2015). Because the Title VII venue provision is "the exclusive venue provision for Title VII employment discrimination actions," *id.*, it should be treated as the controlling anchor statute, and the EPA and *Bivens* claims should be transferred alongside for reasons of judicial economy. Where, as here, the Title VII and ADA claims and the Plaintiff's other causes of action arise from the same alleged employment practices, the interests of justice strongly favor transferring the entire case to the district where venue is proper under Title VII. *See, e.g. Benton v. England*, 222 F. Supp. 2d 728, 732 (D. Md. 2002)(transferring all claims to proper venue for Title VII claim).

The Eastern District of North Carolina does not meet any prong of the Title VII venue statute. According to her Complaint, Plaintiff resides in Knightdale, NC, which is in the Eastern District of North Carolina. However, Plaintiff does not allege where any of the alleged unlawful employment practices took place. Defendant ATF is headquartered in Washington, DC and that is where Plaintiff lists her work address. Exhibit 1 at 20. Washington, D.C. is therefore also where

Plaintiff would have worked but for the alleged employment discrimination. *See, e.g.*, *Benton* at 730–31 (holding Plaintiff's place of residence improper venue when no other actions tied employer to that state). Plaintiff does not include any allegations regarding where employment records are maintained. She does allege in her Complaint that was in Washington, DC and could have been in Georgia (Georgia Defendants are in Brunswick, GA which is in the Southern District of Georgia). In addition, she received Washington, DC locality pay for most of the relevant time supporting a finding that her home office is Washington, DC. *See*, D.E. 1 at 32. This suggests that she would be working in Washington, DC but for any alleged unlawful practice. Other than her residence being in this district, there is nothing to support venue being proper here.

Accordingly, this lawsuit was filed in the wrong district. Therefore, the Complaint should be dismissed pursuant to 12(b)(3) or transferred to the District of Columbia where Plaintiff is employed or the Southern District of Georgia, where the majority of Defendants work suggesting that is where decisions pertinent to this Complaint took place. *See, e.g. Harley v. Chao*, 503 F. Supp. 2d 763, 775 (M.D.N.C. 2007) (transferring matter where lawsuit was filed in incorrect district and venue was proper where agency was headquartered, where records were kept, or where employment decisions were made).

**B. Plaintiff's Title VII Race and Sex Discrimination Claims must be dismissed for failure to state a claim.**

"A hostile environment that violates Title VII exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Seabrook v. Driscoll*, No. 20-1961, 2025 WL 2202135, at *4 (4th Cir. Aug. 4, 2025) (internal citations and quotations omitted). To state a claim,

> [Plaintiff] must allege that (1) she experienced unwelcome harassment, (2) the harassment was based on her race, color, or sex, (3) the harassment was sufficiently

severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. Harassment is based on race, color, or sex when an employee would not have experienced the harassment but for her protected characteristic.

*Id.* Plaintiff is an African American woman. D.E. 1 at 48. She is thus a member of two protected classes. However, nothing she alleges in her complaint supports a finding that her race or sex were "but for" causes of any of the she allegations she claims are discriminatory. Plaintiff claims that, "[i]n an effort to force out the African American women working in the D.C. office, including Ms. Thomas, Defendants created increasingly hostile working conditions, removed tasks and work, failed to communicate necessary team information, failed to include her in meetings, and stymied her efforts to access her benefits." *Id.* at 49. "These adverse actions created **a hostile and retaliatory working environment** for Thomas and were evidenced by the knowledge and inaction of high-level managers and department leaders." *Id.* at 50 (emphasis added).

She supports her contention by including hearsay from a previous internal investigation at ATF. According to Plaintiff,

> ATF employee, Mr. Albert W. Verheyn testified during the internal investigation of Ms. Thomas's [2023 ATF EEO] complaint that when the Leadership and Professional Development Division (LPDD) relocated its offices from Washington, D.C. to Georgia, several staff chose to remain in Washington, D.C. He stated these staff, mostly Black females, were targeted in an effort to make them leave so their positions could be backfilled in the Georgia office. The African American women in the D.C. office, Ms. Thomas, Ms. Williams, and Ms. Tyler received lower performance evaluations for issues that had not been discussed with them previously for FY 2022. In their previous performance evaluations and ratings, they had all received "Outstanding" ratings.

*Id.* at 9-10.

Plaintiff fails to plead sufficient facts that her alleged hostile work environment is based on either sex or race. She lists the elements of both claims but then gives no details to support either. She simply states in a conclusory fashion that other African American female employees

chose to stay in the DC office and that ATF wanted employees to move to the Georgia office. Nothing about those allegations suggests that Federal Defendants' actions were based on either race or sex. "Whan Title VII hostile workplace claims "[are] based on a threadbare recital of the cause of action supported by conclusory statements and is therefore insufficient, [they] must be dismissed." *Harless v. City of Raleigh*, 2025 WL 1762252, at \*4 (E.D.N.C. June 25, 2025). *See, also, McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 409 (4th Cir. 2022) (explaining that plaintiff's own conjecture cannot "impute a racial character to what appears to be neutral" behavior).

The Court of Appeals for the Fourth Circuit addressed a similar claim where Plaintiffs did not move to a new office location and alleged harassment based on race. In *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 782 (4th Cir. 2023), the Court held that "Plaintiffs' sales woes could just as easily have an innocuous explanation: Robinson and Hall chose not to relocate to the 'sales tower' with the rest of the managers not because of their race." *Id.* Here, as in *Robinson*, Plaintiff's generalized recitation of the elements of a harassment claim do not rise to the level of stating a race or sex claim of discrimination. *See, e.g. Skipper v. Giant Food Inc.*, 68. Fed. App'x 393, 399 (4th Cir. 2003) ("[A] plaintiff pressing a hostile work environment claim must substantiate [her] claim with reasonable specifics about the alleged incidents that underlie the claim.")

### C. Plaintiff's Equal Pay Act ("EPA") Claim Must Be Dismissed For Failure to State A Claim.

The EPA prohibits an employer from paying an employee less than employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1). To succeed on an EPA claim, a plaintiff must first make a *prima facie* case establishing "(1) the [employer] paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility (3) under similar working conditions." *Spencer v. Va. State Univ.*, 919 F.3d 199,

203 (4th Cir. 2019). "[A]t this initial stage we ask only whether the claimants and the identified comparators worked jobs requiring "equal skill, effort, and responsibility," and whether each claimant was paid less than one or more comparators." *U.S. Equal Emp. Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 122 (4th Cir. 2018).

In support of her EPA claim, Plaintiff states that she

> was performing a common core of tasks associated with her Human Resource Specialist job that were substantially equal to that of her male counterparts. Her job title, job description, and official responsibilities were substantially equal to that of her male counterparts. The conditions where Ms. Thomas and her male counterparts performed the work were substantially similar. Defendant Lang, Division Deputy Chief, Leadership and Professional Development Branch, Defendant Ernest Lintner, Branch Chief, Advanced Training Branch, Defendant Jerry "Wade" Brashier, Deputy Chief, Leadership and Professional Development Branch, and Defendant Mark Jackson, Acting Chief, Advanced Training Branch, along with the approval of other management officials of Defendant ATF, took numerous adverse actions against Ms. Thomas as detailed in the preceding paragraphs while treating similarly situated male employees more favorably.

*Id.* at 50-52. She then goes on to claim that

> **Ms. Thomas's male counterparts were paid more and promoted more often, in violation of the Equal Pay Act. Her counterparts also received additional benefits, including access to leave benefits and promotions**. For example, Mr. Lang's wife was able to receive a hardship accommodation on the basis of his promotion. Additionally, a man Ms. Thomas had made a direct complaint against and had an internal investigation in his file, was promoted to her superior. These adverse actions created a hostile and retaliatory working environment for Ms. Thomas and were evidenced by the knowledge and inaction of high-level managers and department leaders. Ms. Thomas suffered damages as a result of Defendants' unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action. Additionally, Ms. Thomas' damages include medical bills, hospital bills, travel expenses, and housing expenses.

*Id.*

First, Plaintiff seems to conflate her causes of action – including language about hostile work environment and retaliation in her EPA claim. And more importantly, Plaintiff has failed to plead sufficient facts on any of the three prongs to state a violation of the EPA. Other than saying

that certain individuals were paid more than she was for the same work, she does not give any specifics. For the wage portion of a claim, "[t]he EPA does not dictate to a plaintiff what comparator she must choose, but requires only that, for the purposes of establishing a *prima facie* case, she choose a comparator of the opposite sex who performs substantially equal work for greater pay." *U.S. Equal Emp. Opportunity Comm'n v. Maryland Ins. Admin.* at 121. Plaintiff provides no comparator at all. There is nothing in the Complaint that states what anyone was paid, including Plaintiff. As such, she fails on this prong.

She also fails on the second two prongs. Plaintiff never explains the duties of any employees, including herself. And she gives no specifics about working conditions except that some employees were in Washington, DC and some were in Georgia. *See*, e.g., *McGee v. Virginia Dep't of Env't Quali*ty, 624 F. Supp. 3d 616, 623 (E.D. Va. 2022) (finding comparator not valid where duties and workflow varied from office to office). Her claim amounts only to conclusory labels and must be dismissed under Rule 12(b)(6).

### D. Plaintiff's *Bivens* Action Must Be Dismissed For Failure to State a Claim

Plaintiff's attempt to assert *Bivens* claims against the individual Federal Defendants fails at the threshold, as the Supreme Court has repeatedly cautioned that expansion of Bivens beyond its narrow, established contexts is 'a disfavored judicial activity.' *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). "When asked to imply a *Bivens* action, our watchword is caution." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (internal quotations omitted). Indeed,

> *Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective.

*Carlson v. Green*, 446 U.S. 14, 18–19 (1980) (internal citations omitted). A *Bivens* violation occurs when (1) a Defendant acts under the authority of the Federal government and (2) that action deprives the plaintiff of an individual right under the Federal Constitution. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Since *Bivens* was decided, the Supreme Court has significantly limited the types of causes of action that may be brought. *See Ziglar at* 136 . In *Abbasi*, the Supreme Court clarified that "a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.' " *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

The *Abbasi* Court specified three cases in which a *Bivens* remedy has been found available: *Bivens*, 403 U.S. 388, 389-98 (1971) (remedy available for Fourth Amendment claim against federal agents after they handcuffed a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (recognizing *Bivens* remedy in suit against a Congressman by former employee who claimed sex discrimination in violation of the equal protection clause of the Fifth Amendment); and *Carlson v. Green*, 446 U.S. 14, 19 (1980) (recognizing damages remedy under *Bivens* for Eighth Amendment violation by federal jailers when they refused to treat a prisoner-plaintiff's asthma).

According to her Complaint, individual Defendants Lang, Jackson, Brashier, and Lintner discriminated against Ms. Thomas based on her sex and her race which is a violation of her rights to equal protection under the law by taking adverse actions against her and treating her differently from similarly situated White male ATF employees. In addition, individual defendants in this case, Lang, Jackson, Brashier, and Lintner allegedly discriminated against Ms. Thomas on the basis of her exercise of her First Amendment rights to complain about the unequal pay and the adverse, discriminatory, and retaliatory actions taken against her which is a violation of her rights to

exercise her first amendment rights to free speech under the law by complaining about the adverse actions against her and other Black and female employees of the ATF who were treated differently from similarly situated White male ATF employees. *Id.* at 52-56.

The Supreme Court has articulated a two-step process for determining whether a *Bivens* cause of action exists for a proposed claim. First, the Court must consider whether the instant case presents a "new context," i.e. did it "differ in a meaningful way" from *Bivens*, *Davis*, and *Carlson*. *Abassi*, 582 at 139. If the claim "do[es] not fall precisely under *Bivens*, *Davis*, or *Carlson*," the court must consider whether "special factors counsel[ ] hesitation" in extending a *Bivens* remedy. *Id.*

Plaintiff's *Bivens* claim asserting First Amendment violations is one that has never been recognized in a *Bivens* context and is inherently a new context. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). And the Supreme Court has expressly decided that the judiciary is less equipped than Congress to address alleged constitutional violations, "especially...when it comes to First Amendment claims." *Egbert v. Boule,* 596 U.S. 482, 500 (2002). "Extending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs. A plaintiff can turn practically any adverse action into grounds for a retaliation claim." *Id.* at 499.

Plaintiff's claims of race and sex discrimination also are a new context. This claim is not the same as the search of the plaintiff's home in *Bivens* or the medical care at prison facility in *Carlson. Davis* is the only case in which the Supreme Court implied a *Bivens* remedy in a sex discrimination context, but Plaintiff's claims present "meaningful" differences from *Davis*. *See Abbasi* at 122. In *Davis v. Passman*, 442 U.S. 228 (1979), the employer explicitly fired a female employee because she was a female and in favor of a male. Although, there may be a similarity

between *Davis* and Plaintiff's allegations in that they both alleged sex discrimination in an office setting, they are not at all the same. Unlike the plaintiff in *Davis,* Plaintiff here is employed with a federal agency and not Congress. In addition, she has not lost her job. And she has not plead that anyone explicitly (or implicitly) told her that anything happened to her because she is a woman. As such, Plaintiff's claims arise in a new context when compared to *Davis*. Just as the Supreme Court cautioned in *Abbasi* and *Egbert*, although there may be parallels, "a modest extension is still an extension." *Abbasi*, 582 U.S. at 147. And as the Fourth Circuit noted, "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall *precisely* under *Bivens*, *Davis*, or *Carlson*." *Tate*, 54 F.4th at 845 (emphasis added).

The second prong of the *Bivens* analysis is whether or not an alternative remedial structure available in a case. *Abbasi* at 122. The Supreme Court has instructed that "a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, an 'alternative remedial structure.' " *Egbert* at 493. When such a structure is in place, that fact alone, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Furthermore, it is of no consequence that the "existing remedies do not provide complete relief." *Id.* Here, Plaintiff has alternative remedies to a *Bivens* claim, such as her office dispute resolution process, the Federal Tort Claims Act, complaints through the EEOC, and private rights of action under Title VII and similar EEO statutes. 28 U.S.C. §§ 1346, 2671–2680; 28 U.S.C. §§ 1346, 2671–2680.  Thus, Plaintiff's Complaint should be dismissed as it presents a new context and is not actionable under *Bivens*. *Akacem v. Garcia*, 2023 WL 8282374 (D. Md. Nov. 30, 2023)(finding alternative remedial structures as one reason to not extend *Bivens*).

**VI. Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act (42 U.S.C. §§ 2000e et al.) and (29 U.S.C. § 215(a)(3)).**

The crux of this Claim is that Plaintiff filed an EPA claim on October 24, 2022. *Id.* at 56. She then states that, after her complaint,, she began receiving "denials for her requests and appeals for remote work, telework, reasonable accommodations, hardship placements, and alternative work details." *Id.* And then she claims that a "retaliatory internal investigation" was started against here on July 23, 2023. *Id.* at 57.

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Holloway*, 32 F.4th at 299–300. To plead a retaliation claim, Plaintiff must allege a causal link between her protected activity and the adverse employment action, such that the latter happened "because" of the former. *Seabrook v. Driscoll*, 2025 WL 2202135, at *5 (4th Cir. Aug. 4, 2025). The EPA provides that it is unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter ... " 29 U.S.C. § 215(a)(3). Thus, to state a claim for EPA retaliation, a plaintiff must plausibly allege that: (1) engagement in protected activity, (2) materially adverse action ... which ... might well have dissuaded a reasonable worker from making or supporting a charge of discrimination, and (3) causality." *Darveau v. Detecon, Inc.,* 515 F.3d 334, 340 (4th Cir. 2008).

The timeline of Plaintiff's actions and her employer's actions do not support this claim. First, Plaintiff claims that the problematic behavior from her employer (denials of accommodation requests, etc.) started in February 2022 after she received a 'workplace planning and reentry email" and requested information about a remote work assignment. D.E. 1 at 20. Previously, because of

the COVID-19 pandemic, she had been working from her home in North Carolina from May 2020 to March 2022. *Id.* at 6, 16.  On March 23, 2022, Plaintiff requested a remote work position from Lang based on family issues. *Id.* at 21. Her request was denied. *Id.* This was well before her asserted protected activity had occurred.

Then, on October 24, 2022, Plaintiff filed Administrative Complaint of ADA discrimination and retaliation with ATF. *Id.* at 4, 35. She also states that on the same day, she "engaged in protected activity by filing and EPA claim assertion…" *Id.* at 56. This was about access to employment benefits being "discriminatorily rejected" due to her race and sex. *Id.* She then states that an internal investigation was started on July 13, 2023 against her. *Id.* at 57. This is nine months after her asserted protected activity. Where causation is based on temporal proximity alone, the retaliatory action must be "very close" in time to the protected activity to support a *prima facie* case. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that actions taken 20 months after the protected activity do not, without more, suggest causality, and noting that 3-4 months has been found insufficient).

Although there is no "bright temporal line," the Fourth Circuit has held that a period of three to four months between the protected activity and the adverse employment action is too long to establish causation by temporal proximity alone, and "[e]ven a mere ten-week separation between the protected activity and termination 'is sufficiently long so as to weaken significantly the inference of causation between the two events.' " *Perry v. Kappos*, 489 Fed. Appx. 637, 643 (4th Cir.2012) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)). Other than using the word "pretextual and baseless," [*Id.* at 57], Plaintiff's convoluted timeline does not support this allegation. *See, e.g.*, *Reardon v. Herring*, 191 F. Supp. 3d 529, 552 (E.D. Va. 2016) (granting motion to dismiss where, among other issues, [Plaintiff's] allegations concerning the chronology

of her protected activity are so vague that the Court is unable to confidently determine whether temporal proximity might support an inference of causation."). She gives, at best, a confusing chronology of events and claims acts are pretextual but gives no evidence of any "retaliatory animus." *Id.* at 553 (no causal relationship in the absence of any allegations to support an inference of antagonistic actions or retaliatory animus). The behavior she describes as retaliatory began before she engaged in any protected behavior and did not change after that. Plaintiff pleads no facts showing how these two are connected.  "[A] plaintiff must show that his employer took the adverse action *because* of the protected activity." *Roberts v. Glenn Indus. Grp.*, Inc., 998 F.3d 111, 123 (4th Cir. 2021)(internal quotations and citations omitted).

## V.  Plaintiff's ADA and Rehabilitation Act Claims Must Be Dismissed For Failure to State A Claim

Plaintiff cannot bring suit under the ADA for discrimination based on disability. Thus, any ADA claim must be dismissed. *See Jenkins v. Rinaldi*,  2001 WL 34564362, at *3 (M.D.N.C. Mar. 23, 2001) ("The ADA does not cover federal employees."), *aff'd*, 26 F. App'x 365 (4th Cir. 2002). Instead, federal employees bringing claims for disability discrimination must sue under the Rehabilitation Act. *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001) (stating that "the Postal Service is not subject to suit under the ADA," and holding that federal employees raising a claim of disability discrimination must instead sue pursuant to the Rehabilitation Act).

> To state a prima facie case on a failure-to-accommodate claim under the Rehabilitation Act, as under the ADA, a plaintiff must show that (1) she is an individual with a qualifying disability, (2) that her employer had notice of that disability, (3) that she could perform the essential functions of her job with a reasonable accommodation, and (4) that her employer refused to make a reasonable accommodation.

*Herkert v. Bisignano*, 2025 WL 2348704, at *8 (4th Cir. Aug. 14, 2025).

Plaintiff's allegations under Count Five and the facts set out in her Complaint do not support a failure to accommodate claim. In fact, they show that when her employee was put on notice of her disability and her request for accommodation, she was allowed to work from her home in North Carolina. Her claim frames it differently, but her facts undermine her own claim.

In her Complaint, Plaintiff sets out this count as follows:

On July 14, 2022, Ms. Thomas notified Defendants via email to Timothy Lang, Whitney Proctor, and Mark Jackson about her disability via a note from her doctor and requested a reasonable accommodation for 100% remote work. Plaintiff was aware that others who did not have disabilities had been given remote work assignments or allowed to work remotely. D.E 1 at 58-61.

Both Mr. Lang and Mr. Jackson have told Ms. Thomas on multiple occasions that her job can be done through telework, yet they have refused to provide her with a remote work assignment so that she can access timely and regular mental health care from her medical provider without significant excessive travel and taking leave. Ms. Thomas submitted multiple forms, doctor's letters, and grievances attempting to access the interactive process for a reasonable accommodation either via remote work, hardship placement, or through her rights as a disabled individual. Despite her documentation, her superiors second guessed her when she had limitations due to her medical issues and treated her federally protected requests for accommodation as fraudulent activity. All applications were denied, except for the August 1, 2022 conditional provision of accommodation that was concurrent with her work assignment to Nashville, Tennessee. *Id.* at 58-61.

Defendants refused to engage in the interactive process and denied Ms. Thomas' reasonable accommodation requests to work remotely, erroneously claiming that she would need to submit an additional hardship request, and that "failing to do so would void her ability to work out of and telework from North Carolina." Such a condition is not supported by department policy or Federal law. Defendants repeatedly provided incorrect and misleading information about Plaintiff's benefits and legal right to access accommodations. *Id.* at 58-61.

Ms. Thomas applied for a position transfer two times. She was not chosen for the positions due to retaliation from Mr. Jackson, Mr. Lang, and Mr. Brashier. Ms. Thomas was required to take medical leave, FMLA, and even had to visit the hospital as her condition worsened due to the refusal of Defendants to provide a reasonable accommodation for her in the form of a remote work assignment or hardship transfer. *Id.* at 58-61.

D.E. 1. However, her facts as pled do not support these allegations. On July 14, 2022, Plaintiff requested reasonable accommodation using DOJ 100A form for her anxiety. *Id.* at 25. Contrary to what she alleges in Claim Five, she states that on July 18, 2022, she was placed in teleworking detail in NC for 8 weeks. *Id.* at 22. On July 25, 2022, Plaintiff emailed Lang "It was my understanding that the interim solution for me to temporarily work out of Raleigh was until a reasonable accommodation or hardship was approved." *Id.* at 26. Mr. Lange responded,

> A reasonable accommodation might be able to assist you in some fashion, but based on your situation, the only permanent solution for you to relocate to Raleigh, NC is to file a hardship. Both myself and DAD Pallozzi have been very clear about your need to file a hardship based on the information you have submitted and discussed with us. The burden is on you and not the Bureau as you were hired to report to HQ. Putting together a hardship package is not that difficult, as I have assisted my wife on multiple occasions when she had to file one to relocate because of my career advancements.

*Id.* at 26-27.

Again, Plaintiff gives no details as what the difference is between reasonable accommodation, telework, and hardship. She then writes that from July 31, 2022, to March 26, 2023, she was an ATF remote HR specialist from her home in North Carolina. *Id.* at 6. From, August 1, 2022, to September 9, 2022, Lang approved temporary reasonable accommodation. *Id.* at 27. And then again, from December 6, 2023, to November 25, 2024, Plaintiff was a remote HR specialist from her home in North Carolina. *Id.* at 6. She describes many meetings and denials of requests, but she also states that she has been working remotely since July 2022 when she requested her 100% remote accommodation. "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation." *Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 415 (4th Cir. 2015). Here, the Complaint suggests that Plaintiff has been working remotely from Raleigh her entire career with ATF, making this claim nonsensical.

Further, even if she was not allowed to telework, "courts in this circuit have frequently held [that] an employer's refusal to allow a flex schedule or telework arrangement, *without more*, does not rise to the level of an adverse employment action." *Walker v. Md. Dep't of Info. and Tech.*, 2020 WL 6393435, at *3 (D. Md. Nov. 2, 2020) (emphasis added) (collecting cases).

**VI. Plaintiff's Family and Medical Leave Act ("FMLA") Claim Must Be Dismissed for Failure to State a Claim**

To state an interference claim under the FMLA, a covered employee must establish "(1) [s]he is entitled to an FMLA benefit; (2) h[er] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Wilson v. Nash Edgecombe Econ. Dev., Inc.*, 2020 WL 5594538, at *16 (E.D.N.C. Sept. 18, 2020)(quoting *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Ultimately, Plaintiff claims that she repeatedly received denials for her requests and appeals for remote work, telework, reasonable accommodations, hardship placements and alternative work details. *Id.* at 62-64. None of these things have anything to do with FMLA nor anyone interfering with her access to the FMLA. Other than stating that "Ms. Thomas invoked the use of FMLA," there is no mention of any interference on the part of anyone with her use of FMLA. *Id.* at 62-64.

FMLA is mentioned nine times in the Complaint, but the only portions having anything to do with a request for FMLA have to do with a request for more documentation. *See id.* at 39 ("As this is not supported by your medical documentation, I am unable to approve the 160 hours of FMLA you requested to use."). The FMLA entitles an employer "to request documentation to support a claim of illness." *Sturdivant v. Geren*, 2009 WL 4030738, at *7 (E.D. Va. Nov. 19, 2009) (unpublished), *aff'd sub nom. Sturdivant v. McHugh*, 450 F. App'x 235 (4th Cir. 2010) (per curiam) (unpublished); *see* 29 U.S.C. § 2613(b). The same day as the communication about the need for more medical documentation, February 9, 2023, Plaintiff's request for FMLA was denied. D.E. 1

at 40. However, it was then **approved the next day**. *Id.* Simply, Petitioner avers that she was out of the office on leave after **qualifying for FMLA protection from February 10, 2023**, until March 27, 2023. *Id.*

Accordingly, Plaintiff fails to allege any of the three prongs to assert a FMLA interference claim. Assuming *arguendo* that she was qualified for FMLA, there is nothing to support a claim that anyone interfered with her access to FMLA. Finally, Plaintiff has asserted no facts demonstrating prejudice connected to the alleged FMLA interference. "The FMLA provides no relief unless the employee has been prejudiced by the violation." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (quotation omitted); *see Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002). As she has worked remotely the entire time, Plaintiff has not met her burden on this Count.

Ultimately, Plaintiff's Complaint is a confusing, non-chronological narrative. She has not met her alleged any facts to support any of the causes of actions she lists. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp.* at 545 (internal quotations omitted). Here, Plaintiff has not met this standard. Accordingly, Plaintiff's complaint should be dismissed for failure to state a claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully requests that the Court grant the motion to dismiss and dismiss Plaintiff's complaint pursuant to Rule 12(b)(3) for improper venue or Rule 12(b)(6) for failure to state a claim.

Respectfully submitted, this 22nd day of September, 2025.

W. ELLIS BOYLE
United States Attorney

BY: */s/ Katherine Asaro*
KATHERINE ASARO
Assistant United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4849
Email: katherine.asaro@usdoj.gov
NC Bar # 44185

*Attorney for United States of America*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 22nd day of September, 2025 served a copy of the foregoing upon the below-listed party by electronically filing the foregoing with the Court on this date using the CM/ECF system or placing a copy in the U.S. Mail to the following:

Valerie L. Bateman
New South Law Firm
209 Lloyd Street
Suite 350
Carrboro, NC 27510
Email: valerie@newsouthlawfirm.com


BY:    */s/ Katherine Asaro*
KATHERINE ASARO
Assistant United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC  27601
Telephone: (919) 856-4849
Email: katherine.asaro@usdoj.gov
NC Bar # 44185


*Attorney for United States of America*