IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-242-M-KS

| | | |
|---|---|---|
| CHRISTINE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEP'T OF JUSTICE; BUREAU OF ALCOHOL, TOBACCO, FIREAMS AND EXPLOSIVES; TODD BLANCHE[1], in his official capacity; TIMOTHY LANG, in his individual capacity; ERNEST LITTNER, in his individual capacity; MARK JACKSON, in his individual capacity; WADE BRASHIER, in his individual capacity; and JOSEPH MASTRIANNA, in his individual capacity,<br><br>Defendants. | ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court on Defendants' Motion to Dismiss [DE #12]. The parties have fully briefed the issues presented, and the motion is ripe for ruling. Where the motion has been referred to the undersigned and the parties have not consented to the jurisdiction of the magistrate judge, the motion is undertaken pursuant to 28 U.S.C. § 636(b)(1)(B) for memorandum and recommendation.

## BACKGROUND[2]

---

[1] Todd Blanche became Acting Attorney General on April 2, 2026, and is therefore substituted as a defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The facts summarized here are drawn from Plaintiff's complaint. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (all factual

Christine Thomas ("Plaintiff") brings an employment discrimination lawsuit against Defendants for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Equal Pay Act ("EPA"), the First and Fifth Amendments to the Constitution, and the Family and Medical Leave Act ("FMLA"). (Compl. [DE #1] at 2–3.)

Plaintiff was hired by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in 2019 as a Human Resources Specialist in the Washington, D.C. office. (Compl. ¶ 45.) From May 19, 2020, until March 29, 2022, Plaintiff worked remotely from Knightdale, North Carolina. (*Id.*) In February of 2022, Plaintiff was diagnosed with depression and anxiety. She "was always able to perform the essential functions of her position with or without a reasonable accommodation but she requested an accommodation in order to help her manage her disability." (*Id.* ¶ 55.)

On March 23, 2022, Plaintiff emailed Defendant Timothy Lang and Defendant Mark Jackson requesting the ability to work remotely and was told to request a hardship request. (Compl. ¶ 57.) Plaintiff later learned she did not qualify for a hardship petition. She again asked Lang for a remote work position based on her family situation but was denied. (*Id.* ¶¶ 58–59.) Plaintiff then asked to change her in-office schedule so she could attend medical appointments. She was told she would need to switch her days with another employee. (*Id.* ¶ 60.)

---

allegations in complaint are assumed true and construed in the light most favorable to the plaintiff on motion to dismiss).

On April 29, 2022, Plaintiff reached out to Associate Ombudsman Carla Miller about what she believed to be discriminatory treatment by Jackson. (Compl. ¶ 62.) Plaintiff stated "that she was no longer comfortable going through her chain of command due to the way she had been treated and the anxiety and stress it was causing. She discussed the inequity of management's implementation of telework and remote work policies." (*Id.*) Between May 5, 2022, and June 2, 2022, Plaintiff contacted Acting Assistant Deputy Director Vince Pallozi about "unfair treatment, discrimination, and intimidation." (*Id.* ¶ 63.) On June 2, 2022, Plaintiff had a meeting with Jackson and Lang where she was "interrogated [ ] about her living situation" and was "criticized . . . for having made requests for accommodation and leave." (*Id.* ¶ 65.) After the meeting, Plaintiff again contacted Pallozzi reporting discrimination by Jackson and Lang. (*Id.* ¶ 66.)

On June 3, 2022, Plaintiff requested from Jackson a remote work position based on personal financial hardship, but the request was denied with no explanation. (Compl. ¶¶ 67–68.) Plaintiff reported the denial to Ombudsman Miller asserting "the denial was discriminatory because similarly situated individuals, including Jackson, were permitted to work remotely." (*Id.*)

On July 13, 2022, Plaintiff applied for a telework agreement and the following day requested reasonable accommodation for her depression and anxiety. (Compl. ¶¶ 69–70.) Plaintiff later notified Lang and Jackson in an email informing them of her disability and requested that she be allowed to work remotely full-time as a reasonable accommodation for her disability. (*Id.* ¶ 71.) On July 18, 2022, Plaintiff

was placed on a teleworking detail in North Carolina for eight weeks but was informed the only permanent solution was for her to relocate to Raleigh based upon hardship. (*Id.* ¶¶ 63, 72.)

On August 1, 2022, Lang notified Plaintiff of his conditional approval for her temporary reasonable accommodation from August 1 until September 9, 2022, as the essential functions of her job could be performed via telework. He further informed Plaintiff that she would need to "submit a hardship transfer request" to continue working remotely. (Compl. ¶ 73.) During the duration of her reasonable accommodation request, Plaintiff's locality pay was changed from Washington, D.C., locality pay to North Carolina locality pay.[3] (*Id.* ¶ 74.)

On September 16, 2022, Plaintiff submitted another reasonable accommodation request, along with a doctor's note stating that Plaintiff should work remotely, if possible, due to her treatment for depression and anxiety. (Compl. ¶ 75.) On September 22, 2022, Jackson and Lang each submitted a memorandum to agency officials about Plaintiff's remote work requests, which included negative comments about Plaintiff's attitude and work performance. (*Id.* ¶¶ 76–77.) Defendant Wade Brashier and Whitney Proctor both informed Plaintiff that the medical documentation submitted failed to indicate that she could still perform the essential functions of her job based on her medical condition. (*Id.* ¶¶ 79, 81.)

[3] Plaintiff has not specified which locality in North Carolina her pay was based on. *See* Locality Pay Area Definitions, United States Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2026/locality-pay-area-definitions/ (last visited July 14, 2026).

On September 30, 2022, Brashier gave Plaintiff a lower performance rating from her previous rating of "Outstanding" to "Fully Successful," despite only being Plaintiff's supervisor for approximately three weeks. When Plaintiff inquired about the rating, Brashier told Plaintiff that Jackson made the determination of the lower performance grade. (Compl. ¶ 83.)

On October 10, 2022, Plaintiff complained to Assistant Director Dent "about unfair treatment, the denials of her requests for reasonable accommodations, remote work, and adverse actions by Lang and Jackson." (Compl. ¶ 85.) Jackson denied Plaintiff's second request for a remote work agreement based upon Plaintiff's attitude and her failure to file a hardship request. (*Id.* ¶ 86.) Plaintiff claims the denial was contrary to agency policy requiring only that "(1) the employee is in good standing and (2) the job can be done remotely." (*Id.*)

On October 24, 2022, Plaintiff filed an administrative complaint of discrimination and retaliation with ATF. (Compl. ¶ 91.) Dent approved a remote detail on November 6, 2022, allowing Plaintiff to report directly to Dent. (*Id.* ¶ 92.) On November 11, 2022, Plaintiff's reasonable accommodation request was denied. (*Id.* ¶ 94.)

On February 3, 2023, Plaintiff "refus[ed] to sign an offered settlement to close her EEO complaint" filed on October 24, 2022. (Compl. ¶ 103.) On February 6, 2023, Plaintiff filed a formal administrative complaint of race, sex, and disability discrimination and hostile work environment with ATF. (*Id.* ¶ 9.) These claims were accepted by ATF on March 7, 2023. (*Id.* ¶ 10.) On February 8, 2023, Plaintiff applied

for a remote work assignment for a third time, which was also denied. (*Id.* ¶¶ 106–07.)

On May 10, 2023, Plaintiff filed a grievance in response to the denial of her request for remote work. (Compl. ¶ 116.) On May 11, 2023, Plaintiff submitted a hardship request for transfer to North Carolina, which was denied on May 24, 2023. (*Id.* ¶ 117.)

Around July 13, 2023, Internal Affairs initiated an investigation of Plaintiff based upon allegations of personal misconduct, including lack of candor, and falsification of official documents. (Compl. ¶ 120.) Because of the pending investigation, Plaintiff's hardship request was denied on August 2, 2023. (*Id.* ¶ 122.) On August 4, 2023, Plaintiff had a panic attack at work and was taken to the hospital. Plaintiff requested permission to telework, but Defendant Ernest Littner denied the request, stating he would only approve leave. (*Id.* ¶¶ 123–24.)

On October 17, 2023, Plaintiff filed an administrative complaint with ATF "alleging sex and race discrimination resulting from the improper classification of a group of predominately white and male employees performing the same work as Plaintiff as law enforcement which resulted in higher salary and additional benefits denied to Plaintiff." (Compl. ¶ 11.) As of the date Plaintiff filed this action, no decision had been issued. (*Id.* ¶ 13.)

## DISCUSSION

### I. Rule 12(b)(3)

Defendants argue venue is improper in the Eastern District of North Carolina as the case "does not meet any prong of the Title VII venue statute." (Am. Mem. Supp. Mot. Dismiss [DE #26-2] at 13.) Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or transfer the action to a more appropriate venue. (*Id.* at 14.) The court disagrees and finds that venue is appropriate here.

Federal Rule of Civil Procedure 12 permits a party to raise a defense of improper venue. Fed. R. Civ. P. 12(b)(3). Venue for Title VII claims is governed by 42 U.S.C. § 2000e-5(f)(3), rather than 28 U.S.C. § 1391(b), which governs cases without their own specific venue statute. Under the Title VII venue statute, an action may be brought:

> (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,
>
> (2) in the judicial district in which the employment records relevant to such practice are maintained and administered,
>
> (3) or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,
>
> (4) but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). In this case, the question is whether venue is appropriate under the first or third prong. Defendants argue the Eastern District of North

Carolina fails to satisfy any of the prongs under the Title VII venue statute.[4] (Am. Mem. Supp. Mot. Dismiss at 13.)

For the first prong, "to determine 'where an alleged discriminatory practice occurred, courts look not only to where the decisions were made, but also to where the discriminatory actions took place.'" *Kumar v. Opera Sols. OPCO, LLC*, No. 1:20-CV-6824-GHW, 2021 WL 4442832, at *17 (S.D.N.Y. Sept. 28, 2021) (quoting *Foley v. Sammons Preston, Inc.*, No. 03-CV-5485, 2004 WL 35438, at *2 (S.D.N.Y. Jan. 6, 2004)). Courts assess the full scope of the alleged discriminatory conduct rather than focusing exclusively on the location of the underlying employment decisions. *See Kumar*, 2021 WL 4442832, at *17 (finding venue appropriate in New York under the first prong where the plaintiff worked remotely as it was where the defendants made decisions adverse to the plaintiff's employment, the defendants communicated discriminatory remarks to the plaintiff while she was in New York, and plaintiff felt the effects of discrimination in New York).

---

[4] Defendants do not argue that venue is improper for Plaintiff's other claims, which are governed by 28 U.S.C. § 1391(b). Rather, it appears Defendants contend those claims should be transferred with the Title VII claims for reasons of judicial economy based upon the pendent venue doctrine. *See Doyle v. McDonough*, No. 1:20-CV-3478-ELH, 2021 WL 4846938, at *20 (D. Md. Oct. 15, 2021) (discussing pendent venue doctrine and noting "the Fourth Circuit has not addressed the pendent venue doctrine, other than once acknowledging it in passing in a nearly decade-old dissenting opinion"). Because venue is proper under the Title VII venue statute, the court need not address the issue of pendent venue.

As to the third prong, "venue is proper *in the judicial district* where Plaintiff would have worked but for the alleged acts." *Harley v. Chao*, 503 F. Supp. 2d 763, 774 (M.D.N.C. 2007). "Title VII plaintiffs who worked remotely for an out-of-district company prior to an alleged unlawful employment practice by that company can establish venue in the judicial district where they worked remotely, because that is presumably where they would have continued to work absent the unlawful employment practice." *Thomas v. EOTECH, LLC*, No. CV TDC-23-3313, 2024 WL 5239487, at *4 (D. Md. Dec. 27, 2024), *aff'd in part, vacated in part on other grounds, remanded*, 169 F.4th 259 (4th Cir. 2026).

Here, Plaintiff worked remotely from her home in the Raleigh, North Carolina area (which is within this judicial district) from August 2019 to March 29, 2022; July 31, 2022, to March 26, 2023; and December 6, 2023, to November 25, 2024. (Compl. ¶ 15.) While Plaintiff initially worked for Defendants in Washington, D.C., Plaintiff worked remotely from the Raleigh area for at least two years prior to the alleged discriminatory acts. (*Id.* ¶ 15); *see Kumar*, 2021 WL 4442832, at *18 ("Defendants' argument that [Plaintiff] would have worked in New Jersey absent any discrimination are belied by the fact that [Plaintiff] primarily worked from home . . . before the bulk of Defendants' discriminatory acts began."). It was during remote work periods that Plaintiff alleges she received a lower performance rating and denials of her reasonable accommodation and remote work requests. (Compl. ¶¶ 83, 86, 94, 99, 106, 107.) Moreover, Plaintiff claims that she sought to work from home as a reasonable accommodation for her alleged disability. Thus, it is clear from the

complaint that Plaintiff would have worked from her home in the Raleigh area but for Defendants' alleged discriminatory and retaliatory denials of her requests to work remotely. Venue is therefore appropriate in this district.

## II. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint or any claims contained therein that fail to state a claim upon which relief can be granted. The intent of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court assumes the truth of all facts alleged in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[s] all reasonable inferences in favor of the plaintiff," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To survive a Rule 12(b)(6) motion, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not contain detailed factual allegations, but it must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Id.* A "formulaic recitation of the elements of a cause of action will not do." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which are sufficient to raise a claim that is plausible on its

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facial plausibility is more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. It requires the plaintiff to articulate facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

Plaintiff asserts six claims against Defendants:

- Count One – Race and Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended (Compl. at 48–50);
- Count Two – Unequal Pay in Violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964 as amended (Compl. at 50–52);
- Count Three – First and Fifth Amendment *Bivens* Claims (Compl. at 52–56);
- Count Four – Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act (Compl. at 56–58);
- Count Five – Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973 (Compl. at 58–61); and
- Count Six – Interference in Violation of the Family and Medical Leave Act (Compl. at 62–64).

Defendants argue Plaintiff has failed to state claims upon which relief may be granted. The undersigned recommends the motion to dismiss pursuant to Rule 12(b)(6) be granted.

### A. Count One (Title VII Race and Sex Discrimination)

Plaintiff asserts claims of "[r]ace and sex [d]iscrimination in violation of Title VII of the Civil Rights Act of 1964, as amended." (Compl. at 48.) Plaintiff expressly alleges a hostile work environment claim. (*Id.* ¶¶ 163–64.) Though not entirely clear, she also appears to be asserting a disparate treatment claim. (*Id.* ¶ 162 (alleging that Defendants "took numerous adverse actions against [her] . . . while treating similarly situated employees more favorably").)

Title VII prohibits employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A hostile environment that violates Title VII 'exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)). To state a hostile work environment claim, a plaintiff must allege facts to support the following findings: (1) she experienced unwelcome harassment; (2) the harassment was based on her race, sex, or protected activity; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) the conduct is imputable to the employer. *Holloway*, 32 F.4th at 300 (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). Whether a work environment is hostile or abusive is determined from the

perspective of a reasonable person, based on the totality of the circumstances, including the frequency and severity of the conduct, whether it was threatening or humiliating, and its effect on the employee's work performance. *Boyer-Liberto*, 786 F.3d at 277. "The inquiry into objectively severe or pervasive abusive conduct must focus on the events that the plaintiff personally experienced" or conduct of which the plaintiff was aware. *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 408 (4th Cir. 2022).

Plaintiff's allegations fall short of the severity required to state a Title VII hostile work environment claim. Plaintiff alleges "[i]n an effort to force out the African American women working in the D.C. office, including [Plaintiff], Defendants created increasingly hostile working conditions, removed tasks and work, failed to communicate necessary team information, failed to include her in meetings, and stymied her efforts to access her benefits." (Compl. ¶ 163.) Plaintiff has alleged no instances of explicit racial animus. *Cf. EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008); *McIver*, 42 F.4th at 409. To be clear, "a plaintiff need not plead that every discrete act was overtly racial [or sexist]. The question is whether the allegations support a plausible inference that race [or sex] explains the pattern." *Gordon v. Heath*, 179 F. 4th 263, 272–73 (4th Cir. 2026). Plaintiff does not allege conduct that was physically threatening,[5] humiliating, or sufficiently severe or

[5] Plaintiff alleges she feared for her physical safety when "HRDS Program Manager Tyson Andersen verbally attacked Ms. Williams and [Plaintiff] during an in-person meeting, with five White men and two African American women present." (Compl. ¶ 115.) However, Plaintiff does not allege what was said in this verbal attack.

pervasive to constitute actionable harassment. Nor does she allege facts showing that the conduct unreasonably interfered with her work performance or altered the conditions of her employment such that a reasonable person would find the work environment hostile or abusive. In her response to Defendants' motion to dismiss, Plaintiff says the "systematic exclusion, denial of accommodations, targeting based on race and sex, removing tasks, failing to communicate necessary information, and excluding Plaintiff from meetings, combined with a pattern of adverse actions against African American women" are sufficient to withstand the motion to dismiss. (Pl.'s Resp. Opp'n Mot. Dismiss [DE #19] at 8.) At most, the allegations describe workplace frustrations and adverse management decisions to which Plaintiff imputes a racial or sexist reason without sufficient facts to support that conclusion. *See McIver*, 42 F.4th at 409 ("But a plaintiff cannot rely on her own "conjecture" to impute a racial character to what appears to be neutral harassment."); *McCleary-Evans v. Md. Dep't Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (repeated allegations absent factual basis that an employer did not hire an African American woman because of "decisionmakers' bias against African American women" were conclusory). Accordingly, Plaintiff's hostile work environment claim should be dismissed.

To the extent Count One alleges a disparate treatment claim based on race and sex, that claim should be dismissed for similar reasons. Title VII protects employees from discrimination based on their race, color, religion, sex, and national origin. 42

(*Id.*) She has also pleaded that Jason Swift, presumably one of the White men present during the meeting, "defuse[d] the situation." (*Id.*)

U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, Plaintiff must allege facts from which it could be plausibly inferred that she (1) is a member of a protected class, (2) was performing her job satisfactorily, (3) she was subjected to an adverse employment action, and (4) she was treated differently from similarly situated employees outside the protected class. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190–91 (4th Cir. 2010). Plaintiff must plausibly allege that the adverse actions she suffered were because of her race or sex. *See McCleary-Evans*, 780 F.3d at 585. As explained above, Plaintiff has failed to allege that any adverse action was because of her race or sex. Furthermore, she has failed to allege any comparator that was similarly situated to her "*in all respects*," meaning that the comparators "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019), *as amended* (Mar. 26, 2019). Accordingly, any disparate treatment claim under Title VII should be dismissed.

### B. Count Two (Wage Discrimination)

Plaintiff alleges wage discrimination based on violation of the EPA and Title VII but includes no allegations regarding the Title VII wage discrimination claim. (Compl. ¶¶ 166–73.) Accordingly, the court construes Plaintiff to have alleged wage discrimination in violation of Title VII based on Plaintiff's allegations regarding the EPA claim. *See Shaw v. North Carolina*, No. 5:23-CV-624-FL, 2024 WL 1259452, at

*4–5 (E.D.N.C. Mar. 25, 2024) (analyzing both EPA and Title VII wage discrimination claims).

The EPA prohibits employers from paying employees differently based on sex for "equal work." 29 U.S.C. § 206(d)(1). "A plaintiff establishes a prima facie case of discrimination under the EPA by demonstrating that (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). Although Plaintiff is not required to plead a prima facie case at this stage of the litigation, she must still "plead facts satisfying the elements of the cause of action created by the EPA." *Shaw*, 2024 WL 1259452, at *4 (citing *Woods v. City of Greensboro*, 855 F.3d 639, 647–48 (4th Cir. 2017)).

To satisfy the aforementioned standard, Plaintiff must identify a male comparator who "performed work 'virtually identical' (or the apparent synonym, 'substantially equal') to the plaintiff's in skill, effort, and responsibility." *Spencer*, 919 F.3d at 203–04 (quoting *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332–33 (4th Cir. 2004)). The EPA requires more than similar work. It distinguishes between the work itself, which must be "equal," and the working conditions, which need only be "similar." 29 U.S.C. § 206(d)(1); *see also Spencer*, 919 F.3d at 204. "In alleging this necessary equality, a plaintiff may not rely on broad generalizations at a high level of abstraction." *Spencer*, 919 F.3d at 204.

Here, Plaintiff fails to plead a comparator with enough specificity to state an EPA claim. As to herself, Plaintiff pleads "[h]er job title, job description, and official responsibilities were substantially equal to that of her male counterparts." (Compl. ¶ 168; *see also id.* ¶¶ 5 (Plaintiff hired by Defendant ATF as "Human Resources Specialist" on August 18, 2019), 15 (Plaintiff worked as Human Resources Specialist in Defendant ATF's "Leadership and Professional Development Branch (LPDD)"), 45 (Plaintiff hired as Human Resources Specialist in August 2019 "for the Advanced Training Branch" in Washington, D.C. and moved to the Leadership and Professional Development Branch in May 2020).) Plaintiff has not alleged the description of her two Human Resource Specialist jobs or what her official responsibilities were for those jobs.

As to comparators, Plaintiff alleges that unidentified "White staff" in ATF's Georgia office who had "similar titles and jobs" were paid more. (Compl. ¶ 41.) That is insufficient for an EPA claim. *See Wheatley*, 390 F.3d at 333 (rejecting "that employees with the same titles and only the most general similar responsibilities must be considered 'equal' under the EPA"); *Spencer*, 919 F.3d at 203–04 (reiterating that "a plaintiff may not rely on broad generalizations at a high level of abstraction" for EPA claim); *Shaw*, 2024 WL 1259452, at *5 (dismissing EPA claim where plaintiff "merely list[ed] various other employees' names, titles, salaries, and number of employees supervised"). It is also insufficient for the Title VII wage discrimination claim because Plaintiff "has not identified male comparators who were paid more." *Shaw*, 2024 WL 1259452, at *5 (first citing 42 U.S.C. § 2000e-2(a); and then citing

*McCleary-Evans*, 780 F.3d at 585–86); *see also Spencer*, 919 F.3d at 207–08 ("While Title VII's 'similarity' requirement demands less of plaintiffs than the Equal Pay Act's 'equality' requirement, . . . the plaintiff must provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly situated *in all respects*.'" (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992))). Accordingly, the EPA and Title VII wage discrimination claims in Count Two should be dismissed.

### C. Count Three (First and Fifth Amendment *Bivens* Claims)

Plaintiff brings *Bivens* claims alleging Defendants violated her First and Fifth Amendment Rights. (Compl. at 52.) Defendants argue these claims must be dismissed as Plaintiff is attempting to expand *Bivens* to a new context. (Am. Mem. Supp. Mot. Dismiss at 21.)

"A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights." *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000). Such a remedy is not available, though, where there are "special factors counseling hesitation in the absence of affirmative action by Congress," *Bivens*, 403 U.S. at 396, or "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective," *Carlson v. Green*, 446 U.S. 14, 19 (1980). Federal employment is a "special factor" counseling against *Bivens* liability. Because there exists a "comprehensive set of procedural and substantive provisions governing the rights of federal employees, it would be inappropriate 'to supplement that regulatory scheme

with a new judicial remedy.'" *Zimbelman*, 228 F.3d at 370 (quoting *Bush v. Lucas*, 462 U.S. 367, 368 (1983)).

Plaintiff's *Bivens* claims arise out of her employment with ATF. Plaintiff asserts "individual Defendants . . . Mr. Lang, Mr. Jackson, Mr. Brashier, and Mr. Littner discriminated against [Plaintiff] on the basis of her sex and her race which is a violation of her rights to equal protection under the law by taking adverse actions against her and treating her differently from similarly situated White male ATF employees." (Compl. ¶ 176.) Additionally, Plaintiff claims the same defendants "discriminated against [her] on the basis of her exercise of her First Amendment rights to complain about the unequal pay and the adverse, discriminatory, and retaliatory actions taken against her which is a violation of her rights to exercise her first amendment rights to free speech." (*Id.* ¶ 177.) Supreme Court and Fourth Circuit caselaw preclude Plaintiff's claims. *See Bush*, 462 U.S. at 368 (refusing to extend *Bivens* to a First Amendment speech claim involving federal employment); *Egbert*, 596 U.S. at 499–501 (same and distinguishing *Davis v. Passman*, 442 U.S. 228 (1979)); *Zimbelman*, 228 F.3d at 370; *Buckner v. Lew*, No. 5:13-CV-199-FL, 2014 WL 1118428, at *14–15 (E.D.N.C. Feb. 6, 2014) (applying *Zimbelman* to former Internal Revenue Service employee's individual capacity claims against higher-ranking agency officials), *M. & R. adopted*, 2014 WL 1118428, at *1–8 (E.D.N.C. Mar. 20, 2014). Accordingly, Plaintiff's *Bivens* claims in Count Three should be dismissed.

### D. Claim Four (Title VII and EPA Retaliation)

Plaintiff brings retaliation claims under both Title VII and the EPA based on denials of her reasonable accommodation requests and remote work requests following her "October 24, 2022 . . . filing of an EPA claim assertion . . . about Mr. Lang's, Mr. Brashier's, and Mr. Jackson's discriminatory treatment." (Compl. ¶¶ 189–90; *see also id.* ¶ 91 (October 24, 2022, protected activity allegations).)

To state a retaliation claim under Title VII and the EPA, a plaintiff must plead facts sufficient to support findings that: (1) she engaged in protected activity; (2) a "materially adverse" employment action was taken against her; and (3) there is a causal connection between the protected activity and the adverse action. *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 574 (4th Cir. 2023). A plaintiff need not make a prima facie showing of each element, but she must plead a non-speculative basis for her retaliation claim. *See Phillips v. WakeMed*, No. 5:20-CV-626-M, 2021 WL 4891741, at *5 (E.D.N.C. Oct. 19, 2021), *aff'd*, No. 21-2301, 2022 WL 1686672 (4th Cir. May 26, 2022); *McCleary-Evans*, 780 F.3d at 585.

Title VII protects against two types of retaliation: (i) participation in an investigation, proceeding, or hearing under Title VII, or (ii) opposition of an employment practice that is unlawful under Title VII or that the employee reasonably believes is unlawful under Title VII. *Phillips*, 2021 WL 4891741, at *8; *Batchelor v. City of Wilson*, 747 F. Supp. 3d 845, 861 (E.D.N.C. 2024); *see also DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). The EPA's anti-retaliation provision is more limited. It "is only triggered where an employee has either [i] filed

a complaint or instituted or caused to be instituted any proceeding under the FLSA, [ii] testified or is about to testify in any FLSA proceeding, or [iii] served or is about to serve on an industry committee." *Bell-Holcombe v. Ki, LLC*, 582 F. Supp. 2d 761, 763 (E.D. Va. 2008). "[A]n internal complaint does not initiate protection of the statute." *Id.*

An action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The inquiry is objective, focusing on whether a reasonable employee would be deterred from engaging in protected activity, while also accounting for the specific circumstances surrounding the challenged conduct. *Carr v. United States*, 674 F. Supp. 3d. 234, 243 (E.D.N.C. 2023), *aff'd*, No. 23-1725, 2024 WL 2558637 (4th Cir. May 24, 2024). This standard applies to federal-sector employees. *Laurent-Workman*, 54 F.4th at 216.

The causal connection between protected activity and an adverse employment action requires proof of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013). A plaintiff must show that the decisionmaker knew of the protected activity and that the materially adverse action would not have occurred absent a retaliatory motive. *Id.*; *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124–25 (4th Cir. 2021). Courts may infer causation from close temporal proximity between a protected activity and the retaliatory action, but a significant delay weakens that inference. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657

(4th Cir. 1998); *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656–57 (4th Cir. 2017) (finding eight to nine months too long for a causal link). However, timing alone is not dispositive, and other evidence of retaliatory intent may establish causation despite a lengthy gap. *Holloway*, 32 F.4th at 300; *Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021) (finding repeated comments by a supervisor about the protected activity and events occurring before the adverse action sufficient to bridge the 16-month gap between the two events).

Plaintiff has failed to plausibly allege a causal connection between her October 24, 2022, protected activity[6] and the "retaliatory Internal investigation" that began around July 13, 2023. (*See* Compl. ¶¶ 189 (October 24, 2022, protected activity), 194 (July 13, 2023, retaliatory investigation).) On October 24, 2022, Plaintiff filed a complaint with Equal Employment Opportunity ("EEO") specialist Donna Vaughan about Defendants Lang, Bashier, and Jackson, claiming that Plaintiff's applications for "reasonable accommodations and remote work were being discriminatorily rejected due to [Plaintiff's] race and sex and in retaliation for [Plaintiff's] advocacy." (*Id.* ¶ 91.) On June 15, 2023, an investigation was initiated as to Plaintiff's October 24, 2022, EEO complaint. (*Id.* ¶ 118.) On July 13, 2023, "an internal investigation was initiated into allegations of personal misconduct against [Plaintiff]" focusing on

[6] The earliest date of protected activity specified in the complaint is October 10, 2022. (Compl. ¶ 85). However, Plaintiff specifically identifies her protected activity occurring on October 24, 2022, as the relevant protected activity for her retaliation claim. (*Id.* ¶ 189.)

alleged "lack of candor and falsification of documents." (*Id.* ¶ 120; *see also id.* ¶ 194.) Internal Affairs informed Plaintiff of the internal investigation. (*Id.* ¶ 120.)

These allegations are insufficient to state a claim. First, Plaintiff has not plausibly alleged that decisionmakers who initiated the internal investigation of Plaintiff were aware of the EEO complaint that Plaintiff filed in October 2024. (Compl. ¶¶ 120, 194.) Plaintiff simply alleges that "Defendants" initiated the internal investigation. (*Id.* ¶¶ 195–96.) Such a conclusory and unsubstantiated allegation is insufficient. *See Batchelor*, 747 F. Supp. 3d at 862 (first citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); then citing *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001); and then citing *Dowe*, 145 F.3d at 657); *Wesley v. Paperfoam Packaging USA*, No. 7:24-CV-43-BO-RJ, 2026 WL 1399920, at *3 (E.D.N.C. May 19, 2026) (dismissing retaliation claim in part because plaintiff did not allege that the people responsible for terminating plaintiff's employment were aware of her protected activity); *Cox v. Red Hat, Inc.*, No. 1:23-CV-766-RDA-WEF, 2025 WL 889888, at *18 (E.D. Va. Mar. 21, 2025) (plaintiff failed to state a claim for retaliation because she did not allege that the people who decided not to promote her knew of plaintiff's protective activities). Second, the length of time between Plaintiff's protected activity on October 24, 2022, and the internal investigation begun July 13, 2023, is too long to support an inference of retaliation. *See Roberts*, 998 F.3d at 126–27; *Penley*, 876 F.3d at 656–57. Plaintiff argues the pattern of adverse actions following her protected activity culminated in the internal investigation and establishes a causal connection between her protected activity and the adverse action.

(Pl.'s Resp. Opp'n Mot. Dismiss at 27.) However, Plaintiff fails to sufficiently plead that any actions taken during this period (from the date she first engaged in protected activity to the date the internal investigation commenced) were motivated by retaliation so as to bridge the temporal gap. Plaintiff's retaliation claims should be dismissed because she has not plausibly alleged a causal link between her October 24, 2022, protected activity and the internal investigation beginning in July 2023.

### E. Count Five (Failure to Accommodate)

The heading of Count Five indicates that Plaintiff sues under both the ADA and the Rehabilitation Act of 1973 for failure to provide her with reasonable accommodation. (Compl. at 58.) Nowhere else in the complaint does Plaintiff mention the Rehabilitation Act, much less allege how Defendants violated the Rehabilitation Act. Defendants correctly state, and Plaintiff agrees, that federal employees are not covered under the ADA. *See Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001); (Am. Mem. Supp. Mot. Dismiss at 26; Pl.'s Resp. Opp'n Mot. Dismiss at 28.) The Rehabilitation Act provides the exclusive remedies for disability discrimination by federal agencies. *Brown*, 6 F. App'x at 156 (citing *Spence v. Straw*, 54 F.3d 196, 197 (3d Cir. 1995)). This claim should be dismissed because Defendants are not subject to suit under the ADA and Plaintiff has not alleged a violation of the Rehabilitation Act. *See Brown*, 6 F. App'x at 156.

Moreover, even assuming Plaintiff had alleged the proper statutory cause of action, she has failed to plausibly allege that she was a qualified individual with a disability. In her complaint, Plaintiff alleges a diagnosis of "depression and anxiety,

making her a 'qualified individual with a disability.'" (Compl. ¶ 55.) A diagnosis alone is insufficient. *See Patterson v. McDonald*, 220 F. Supp. 3d 634, 638–39 (M.D.N.C. 2016) (explaining how a failure to allege "facts suggesting [a plaintiff's] anxiety disorder is a disability" renders a failure to accommodate claim under the Rehabilitation Act insufficient to withstand a motion to dismiss). Plaintiff's allegations concerning the medical opinion which she alleges supports her reasonable accommodation requests do not cure this pleading defect. (*See* Compl. ¶¶ 70, 71, 75, 80, 81, 90.)

### F. Count Six (Family and Medical Leave Act Interference)

Plaintiff sues for interference in violation of the FMLA under 28 U.S.C. § 2615(a)(1). (Compl. at 62.) Defendants argue Plaintiff has not properly brought an FMLA interference claim as Plaintiff fails to mention any interference with her use of FMLA. (Am. Mem. Supp. Mot. Dismiss at 30.) The undersigned agrees with Defendants.

It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). FMLA interference claims require a plaintiff to show that (i) she is entitled to an FMLA benefit, (ii) her employer interfered with an FMLA benefit, and (iii) that interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). While interference in this context can be shown by proof that an employer denied FMLA leave, it can also be shown by proof than an employer discouraged an employee from using FMLA leave. *Id.* (citing 29 C.F.R. § 825.220(b)). The required

showing of harm or prejudice can also be satisfied if an employee provides evidence that she would have structured her leave differently absent the interference. *See Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (plaintiff met prejudice showing in FMLA right-to-notice-of-reinstatement context where plaintiff offered evidence that "he would have structured his leave differently").

Plaintiff fails to plead sufficient facts to support a finding of interference with FMLA. Most of the allegations pled in support of this claim concern alleged disability discrimination, not FMLA interference. (Compl. ¶¶ 213, 215–18.) With regard to FMLA interference, Plaintiff alleges only that (i) Plaintiff "invoked the use of FMLA" on September 22, 2022 (Compl. ¶ 214), and (ii) "Defendants retaliated against [Plaintiff] because she used her FMLA" (*id.* ¶ 219). The latter allegation is conclusory and fails to state a plausible entitlement to relief. Other allegations concerning the events that transpired on September 22, 2022, say nothing about FMLA leave. (*Id.* ¶¶ 76–77.) Rather, the first mention of FMLA leave is in regard to an FMLA request that was denied by Defendant Littner on February 9, 2023, though there is no mention that Plaintiff invoked the FMLA around this time. (*Id.* ¶¶ 107, 109.) According to the complaint, Defendant Littner denied Plaintiff's FMLA request due to lack of medical documentation but approved FMLA use the following day. (Compl. ¶¶ 107, 109–10.) "The FMLA entitles an employer 'to request documentation to support a claim of illness.'" *Wood v. N.C. Dep't Justice*, No. 5:24-CV-680-D, 2025 WL 1934170, at *5 (E.D.N.C. July 14, 2025) (quoting *Sturdivant v. Geren*, No. 1:09-CV-586, 2009 WL 4030738, at *7 (E.D. Va. Nov. 19, 2009), *aff'd sub nom. Sturdivant v.*

*McHugh*, 450 F. App'x 235 (4th Cir. 2010)). Plaintiff fails to plausibly allege any interference with FMLA leave. *See Wood*, 2025 WL 1934170, at *5. Accordingly, this claim should be dismissed.

## CONCLUSION

For the reasons explained above, it is RECOMMENDED that the court GRANT Defendants' motion to dismiss [DE #12] and dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 11, 2026,** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 27th day of July 2026.

KIMBERLY A. SWANK
United States Magistrate Judge