IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:25-CV-00242-M-KS

| | | |
|---|---|---|
| CHRISTINE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEP'T OF JUSTICE;<br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREAMS AND EXPLOSIVES;<br>TODD BLANCHE, in his official capacity;<br>TIMOTHY LANG, in his individual capacity;<br>ERNEST LITTNER, in his individual capacity;<br>MARK JACKSON, in his individual capacity;<br>WADE BRASHIER, in his individual capacity; and<br>JOSEPH MASTRIANNA, in his individual capacity,<br><br>Defendants. | ) | ORDER |

This matter comes before the court on a Motion to Dismiss for Improper Venue and Failure to State a Claim filed by the United States Defendants [DE 12]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a Memorandum and Recommendation ("M&R"), recommending that this court deny Defendants' request for dismissal based on improper venue, but grant the request for dismissal for Plaintiff's failure to state plausible claims for relief. DE 28. Plaintiff filed a timely response to the M&R, objecting to Judge Swank's recommendation to dismiss Plaintiff's claims. DE 30.[1]

[1] Plaintiff also filed a "Response to Defendants' Motion to File Amended Memorandum" (DE 29); however, ten days earlier, the court issued an order granting Defendants' motion (*see* DE 27).

As set forth herein, the court finds no clear error in Judge Swank's recommendation to deny the motion to dismiss for improper venue and adopts the M&R in this respect. In addition, the court finds Plaintiff's allegations, taken as true, fail to state plausible claims for relief. Therefore, the court overrules Plaintiff's objections, adopts the M&R in full, and grants in part and denies in part Defendants' motion to dismiss.

## I. Background

No party objects to Judge Swank's recitation of the factual and procedural background of this case, and the court recounts it here.[2] Christine Thomas ("Plaintiff") was hired by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in 2019 as a Human Resources Specialist in the Washington, D.C. office. Compl. ¶ 45. From May 19, 2020, until March 29, 2022, Plaintiff worked remotely from Knightdale, North Carolina. *Id.*

In February 2022, Plaintiff was diagnosed with depression and anxiety. She "was always able to perform the essential functions of her position with or without a reasonable accommodation but she requested an accommodation in order to help her manage her disability." *Id.* ¶ 55.

On March 23, 2022, Plaintiff emailed Defendant Timothy Lang and Defendant Mark Jackson requesting the ability to work remotely and was told to request a hardship petition. Compl. ¶ 57. Plaintiff later learned she did not qualify for a hardship petition. She again asked Lang for a remote work position based on her family situation[3] but was denied. *Id.* ¶¶ 58–59. Plaintiff then asked to change her in-office schedule so she could attend medical appointments. She was told she

---

Plaintiff does not reference the order, seek reconsideration of the order, or otherwise seek this court's review of the order. *See* 28 U.S.C. § 636(b)(1)(A). Nonetheless, this court has reviewed Judge Swank's order at DE 27 and finds no clear error.

[2] To demonstrate that it has considered the allegations in full, the court has added certain allegations from the Complaint that are not specifically recounted in the M&R.

[3] Plaintiff describes her "family situation" as follows: "Ms. Thomas' sister had died in December 2021 and Ms. Thomas had inherited caretaking responsibilities for her blind niece." *Id.*

would need to switch her days with another employee. *Id.* ¶ 60.

On April 29, 2022, Plaintiff communicated with Associate Ombudsman Carla Miller about what she believed to be discriminatory treatment by Jackson. Compl. ¶ 62. Plaintiff stated "that she was no longer comfortable going through her chain of command due to the way she had been treated and the anxiety and stress it was causing. She discussed the inequity of management's implementation of telework and remote work policies." *Id.* Between May 5, 2022, and June 2, 2022, Plaintiff contacted Acting Assistant Deputy Director Vince Pallozi about "unfair treatment, discrimination, and intimidation." *Id.* ¶ 63. On June 2, 2022, Plaintiff met with Jackson and Lang, at which she was "interrogated [ ] about her living situation" and was "criticized . . . for having made requests for accommodation and leave." *Id.* ¶ 65. After the meeting, Plaintiff again contacted Pallozzi reporting discrimination by Jackson and Lang. *Id.* ¶ 66.

On June 3, 2022, Plaintiff requested from Jackson a remote work position based on personal financial hardship, but the request was denied with no explanation. Compl. ¶¶ 67–68. Plaintiff reported the denial to Ombudsman Miller asserting "the denial was discriminatory because similarly situated individuals, including Jackson, were permitted to work remotely." *Id.*

On July 13, 2022, Plaintiff applied for a telework agreement and the following day requested reasonable accommodation for her depression and anxiety. *Id.* ¶¶ 69–70. Plaintiff later notified Lang and Jackson in an email informing them of her disability and requested that she be allowed to work remotely full-time as a reasonable accommodation for her disability. *Id.* ¶ 71. On July 18, 2022, Plaintiff was placed on a teleworking detail in North Carolina for eight weeks but was informed the only permanent solution was for her to relocate to Raleigh based upon hardship. *Id.* ¶¶ 63, 72.

On August 1, 2022, Lang notified Plaintiff of his conditional approval for her temporary

reasonable accommodation from August 1 until September 9, 2022, as the essential functions of her job could be performed via telework. He further informed Plaintiff that she would need to "submit a hardship transfer request" to continue working remotely. Compl. ¶ 73. During the period of her reasonable accommodation request, Plaintiff's locality pay was changed from Washington, D.C., locality pay to North Carolina locality pay.[4] *Id.* ¶ 74.

On September 16, 2022, Plaintiff submitted another reasonable accommodation request, along with a doctor's note stating that Plaintiff should work remotely, if possible, due to her treatment for depression and anxiety. Compl. ¶ 75. On September 22, 2022, Jackson and Lang each submitted a memorandum to agency officials denying Plaintiff's remote work requests, which included negative comments about Plaintiff's attitude and work performance. *Id.* ¶¶ 76–77. Defendant Wade Brashier and Whitney Proctor both informed Plaintiff that the medical documentation submitted failed to indicate that she could still perform the essential functions of her job based on her medical condition. *Id.* ¶¶ 79, 81.

On September 30, 2022, Brashier gave Plaintiff a lower performance rating from her previous rating of "Outstanding" to "Fully Successful," despite being Plaintiff's supervisor only for approximately three weeks. When Plaintiff inquired about the rating, Brashier told Plaintiff that Jackson made the determination of the lower performance grade. Compl. ¶ 83.

On October 10, 2022, Plaintiff complained to Assistant Director Dent "about unfair treatment, the denials of her requests for reasonable accommodations, remote work, and adverse actions by Lang and Jackson." Compl. ¶ 85. Jackson denied Plaintiff's second request for a remote

---

[4] Plaintiff has not specified which locality in North Carolina her pay was based on. *See* Locality Pay Area Definitions, United States Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/salarieswages/2026/locality-pay-area-definitions/ (last visited July 14, 2026).

work agreement based upon Plaintiff's attitude and her failure to file a hardship request. *Id.* ¶ 86. Plaintiff claims the denial was contrary to agency policy requiring only that "(1) the employee is in good standing and (2) the job can be done remotely." *Id.*

On October 24, 2022, Plaintiff filed an administrative complaint of race and sex discrimination and retaliation by Defendants Jackson, Lang, and Brashier with the EEO at ATF. Compl. ¶ 91. Dent approved a remote detail on November 6, 2022, allowing Plaintiff to report directly to Dent.[5] *Id.* ¶ 92.

On November 11, 2022, Plaintiff's September 16 reasonable accommodation request was denied without explanation. *Id.* ¶ 94. On November 15, 2022, the decision denying Plaintiff's September 22 remote work request was vacated and returned to Dent for "a decision that will either approve the request or detail the reasons for denial in writing." *Id.* ¶ 95. Dent did not respond before her paid leave in January and February 2023; instead, on January 29, 2023, Acting A.D. Morrow "reject[ed] the request." *Id.* ¶ 97.

During the evening of Friday, January 27, 2023, Defendant Ernest Littner[6] notified Plaintiff by email that her remote work detail for Dent was canceled, and he ordered her to appear in the D.C. office the following Monday, January 30, 2023. Plaintiff did not receive the email before Monday morning, because her work day ended at 3:30 p.m. on January 27. Littner gave Plaintiff work that needed to be completed by 7:00 a.m. that Monday, but she missed the deadline due to

---

[5] In one of several inartfully drafted sections of the operative pleading, Plaintiff alleges that, on November 15, 2022, EAD Hughes issued a grievance decision "vacating the denial of *A.D. Dent's denial* of Ms. Thomas' request for a remote work assignment." *Id.* ¶ 95 (emphasis added). This allegation appears to be directly contrary to the allegation in ¶ 92; however, upon closer inspection of the entire Complaint, which does not allege that Dent denied a remote work request, the court finds an apparent typographical error in the ¶ 95 allegation. Pursuant to ¶¶ 76, 77, 85, and 89, the denial for which Plaintiff filed a grievance was made by Jackson and Lang, not Dent.

[6] The Complaint references Mr. Littner as both "Littner" and "Lintner"; the court will use the spelling set forth in the case caption and description of the parties.

the email's timing. Compl. ¶ 99.

Plaintiff and Littner met at 8:30 a.m. on January 30, then at 9:38 a.m., Littner emailed Plaintiff demanding the work he requested. Plaintiff responded that she needed more time to complete the work and asked to respond by close of business. Littner replied that he would mark Plaintiff "AWOL" that day if she did not respond by 11:30 a.m. Plaintiff emailed a partial response at 11:52 a.m., along with her expressed belief that Littner's actions toward her were threatening and intimidating, and sent a full response by the end of the day. Compl. ¶ 100. The following day, Littner issued a "disciplinary caution letter" to Plaintiff for her failure to respond as directed. *Id.* ¶ 101.

On February 3, 2023, Plaintiff "refus[ed] to sign an offered settlement to close her EEO complaint" filed on October 24, 2022. Compl. ¶ 103. On February 6, 2023, Plaintiff filed a formal administrative complaint of race, sex, and disability discrimination and hostile work environment with ATF. *Id.* ¶ 9. These claims were accepted by ATF on March 7, 2023. *Id.* ¶ 10.

On February 8, 2023, Plaintiff applied for a remote work assignment for a third time. The next day, Littner denied the request, along with Plaintiff's request for FMLA leave, citing insufficient medical documentation and attaching a form for completion by Plaintiff's healthcare provider. *Id.* ¶¶ 106–108. Littner stated months later that he also denied the request because he did not believe Plaintiff had COVID when she reported having it. *Id.* ¶ 121. Starting February 10, 2023, Plaintiff went on leave using her accrued annual leave hours until February 21, 2023, at which time she was approved for FMLA leave until March 27, 2023. *Id.* ¶¶ 109-110.

After Plaintiff's return, in early April 2023, Plaintiff became aware that she was not invited to team and department meetings as she had been before, her workload was reduced significantly, and at least one program on which she co-chaired was "reallocated" to a white male. Compl. ¶¶

112-113. On April 11, 2023, Plaintiff applied for an HR Specialist/Training Manager position, and her application was denied more than a year later. *Id.* ¶ 114. On May 2, 2023, Tyler Anderson, HRDS Program Manager, "verbally attacked" Plaintiff and her co-worker, another African-American female, during a meeting with four other white males; the Branch Chief diffused the situation, and Littner, who was also present and Plaintiff's supervisor at the time, did nothing. *Id.* ¶ 115. Plaintiff and her co-worker made complaints against Anderson, and he later apologized. *Id.*

On May 10, 2023, Plaintiff filed a grievance in response to the January 29, 2023 denial by Acting A.D. Morrow of her request for remote work. Compl. ¶ 116. On May 11, 2023, Plaintiff submitted to Littner a hardship request for transfer to North Carolina, which Lang denied on May 24, 2023. *Id.* ¶ 117.

On June 15, 2023, an investigation of Plaintiff's October 22 EEO complaint began and it continued through November 2023. Compl. ¶ 118. That same day, EAD Hughes denied Plaintiff's grievance regarding her third remote work request. *Id.* ¶ 119.

On or about July 13, 2023, Internal Affairs initiated an investigation of Plaintiff based upon allegations of personal misconduct, including lack of candor, and falsification of official documents. Compl. ¶ 120. Because of the pending investigation, Plaintiff's May 11 hardship request was denied on August 2, 2023. *Id.* ¶ 122.

On August 4, 2023, Plaintiff had a panic attack at work and was taken to the hospital. Plaintiff requested permission to telework that day, but Littner denied the request, stating he would only approve leave. *Id.* ¶¶ 123–24. The next day, Plaintiff submitted an application for a HR Development Specialist position, which was denied August 28, 2023, due to an incomplete evaluation by her manager. *Id.* ¶ 125. On August 10, 2023, Plaintiff submitted a complaint to

EAD Hughes regarding "her challenges with receiving reasonable accommodations, accessing her benefits, and employee protections due to discrimination by her immediate supervisors." *Id.* ¶ 126. Although Hughes replied on August 14, 2023, he did not address her "discrimination issues." *Id.* ¶ 127.

On September 20, 2023, Plaintiff requested a work detail to the Office of Regulatory Affairs because she was not regularly receiving work from her supervisors. Littner denied the request citing the pending internal investigation. Compl. ¶ 128. On September 30, 2023, Plaintiff received from Littner an annual performance rating of "Exceeds Expectations," which was lower than her 2020 and 2021 ratings of "Outstanding." *Id.* ¶ 129.

On October 13, 2023, Plaintiff filed an "EPA grievance" regarding "unfair treatment and denial of benefits based on sex" by a number of ATF officials, including Defendants Lang, Jackson, and Brashier. Compl. ¶ 131. On October 17, 2023, Plaintiff filed an administrative complaint with ATF "alleging sex and race discrimination resulting from the improper classification of a group of predominately white and male employees performing the same work as Plaintiff as law enforcement which resulted in higher salary and additional benefits denied to Plaintiff." *Id.* ¶ 11. As of the date Plaintiff filed this action, no decision had been issued. *Id.* ¶ 13.

On November 4, 2023, Plaintiff received a remote work detail in Knightdale, NC. Defendant Lang canceled the detail on August 29, 2024, for reasons Plaintiff believes are pretext for unlawful retaliation. Compl. ¶¶ 132-133.

Based on these allegations, Plaintiff brings an employment discrimination lawsuit against Defendants alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act ("EPA"), the First and Fifth Amendments to the Constitution, the Americans with

Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973 ("RA"), and the Family and Medical Leave Act ("FMLA"). Compl. ¶¶ 159-219. Defendants responded to the Complaint by filing the present motion to dismiss pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. Mot., DE 12. Defendants seek an order dismissing Plaintiff's claims for improper venue or, alternatively, for Plaintiff's failure to state plausible claims for relief. Plaintiff opposes the motion, contending that her allegations are sufficient to support each of her six claims.

This court referred Defendants' motion to Judge Swank for a memorandum and recommendation (M&R). Text Ord., Dec. 1, 2025. In the M&R, Judge Swank found first that venue is proper in this district and, thus, recommends[7] that the court deny Defendants' motion to dismiss or transfer for improper venue. DE 28 at 7-10. Having no objection from the parties, and finding no clear error upon review of Judge Swank's analysis, the court adopts this portion of the M&R and concludes that venue in this district is proper. Defendants' motion seeking dismissal under Rule 12(b)(3) is denied.

Second, Judge Swank recommends dismissal of all claims against Defendants for Plaintiff's failure to state plausible claims for relief. *See* DE 28. Specifically, Judge Swank found that (1) Plaintiff's allegations fall short of the severity required to state a Title VII hostile work environment claim; (2) Plaintiff fails to allege that any adverse action was because of her race or sex as required under Title VII; (3) Plaintiff fails to plead a comparator with enough specificity to state an EPA claim; (4) Supreme Court and Fourth Circuit caselaw preclude Plaintiff's *Bivens*

[7] Although not specified in the M&R, the court construes Judge Swank's analysis and finding as a recommendation for denial of the dispositive motion. *See World Inspection Network Int'l LLC v. J. Strout Holdings, LLC*, No. 1:24CV146, 2024 WL 3566172, at *1 (M.D.N.C. July 29, 2024) (electing to issue a recommendation, rather than an order, where, like here, the defendants sought dismissal of the action for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure).

(constitutional) claims; (5) Plaintiff fails to plausibly allege a causal connection as necessary for her retaliation claims; and (6) Plaintiff fails to plausibly allege any interference with FMLA leave. *See id.* It is to these findings that Plaintiff lodges her objections, and the court will proceed to determine whether Plaintiff's claims should be dismissed under Rule 12(b)(6).

## II. Legal Standards

For dispositive matters, magistrate judges may be designated to conduct hearings (if appropriate) and submit to the district court proposed findings and recommendations for the disposition of such matters. 28 U.S.C. § 636(b)(1)(B). A magistrate judge's recommendation carries no presumptive weight. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations . . . and may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b).

The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Section 636(b)(1) "contemplates that a party's objection to a magistrate judge's report be specific and particularized." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). Thus, "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622. Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## III. Objections

Plaintiff contends that Judge Swank erred by applying a heightened pleading standard and

failing to consider the allegations as a whole in analyzing her Title VII disparate treatment and hostile work environment claims; narrowing the scope of her retaliation claims to two events; omitting analysis of the alleged retaliatory hostile work environment; ignoring allegations that support her wage discrimination and retaliation claims; failing to consider allegations supporting her disability discrimination claim; and failing to consider allegations supporting her FMLA interference claim. DE 30. Defendants lodged no objections to the M&R and did not respond to Plaintiff's objections.

## IV. Analysis

Here, the parties do not object to Judge Swank's application of the proper legal standard—Rule 12(b)(6) of the Federal Rules of Civil Procedure—by which to evaluate the present motion. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As a result, the court accepts the complaint's well-pled factual allegations as true, and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020) (quoting

*Iqbal*, 556 U.S. at 678). Courts should draw all reasonable inferences in favor of the plaintiff, but "we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). Likewise, "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019). Ultimately, when considering a motion to dismiss, the court must "draw on its judicial experience and common sense" to determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

**A. Title VII Discrimination Claims (Count 1)**

Judge Swank recommends that the court grant Defendants' motion to dismiss Plaintiff's Title VII claims alleging disparate treatment and a hostile work environment based on Plaintiff's race and sex for her failure to state plausible claims for relief.

**1. Hostile Work Environment**

According to the Fourth Circuit, a hostile work environment that violates Title VII "exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)). To state a plausible hostile work environment claim, a plaintiff "must allege that: (1) [s]he 'experienced unwelcome harassment'; (2) the harassment was based on [her] race, [sex,] or protected activity; (3) 'the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere'; and (4) 'there is some basis for imposing liability on the

employer.'" *Id.* (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

For the second element, a plaintiff must allege that she "would not have experienced the harassment 'but for' her protected characteristic." *Seabrook v. Driscoll*, 148 F.4th 264, 271 (4th Cir. 2025). Mere speculation does not suffice: "Being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination." *Id.* (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020)).

Regarding the third element, "[w]hether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Id.* (quoting *Boyer-Liberto*, 786 F.3d at 277). "That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 300-01. "'[R]ude treatment,' 'callous behavior,' or 'routine difference of opinion and personality conflict,' without more, will not suffice." *Id.* (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–316 (4th Cir. 2008)).

Judge Swank concludes that Plaintiff's allegations "fall short of the severity required to state a Title VII hostile work environment claim," finding that Plaintiff "does not allege conduct that was physically threatening, humiliating, or sufficiently severe or pervasive to constitute actionable harassment. Nor does she allege facts showing that the conduct unreasonably interfered with her work performance or altered the conditions of her employment such that a reasonable person would find the work environment hostile or abusive." DE 28 at 13-14. Plaintiff counters that the M&R improperly "narrows the claim" and that her allegations "describe a sustained

campaign affecting Plaintiff's duties, compensation, access to benefits, professional standing, and health: removal of substantive work from Black women in D.C.; transfer of that work to White hires in Georgia; exclusion from meetings and planning; denial of remote work afforded to White employees; repeated obstruction of accommodation requests; a downgraded rating; reduced locality pay; disparagement of Plaintiff and her physician; denial of hardship and transfer requests; threats and discipline; and a misconduct investigation after her discrimination complaint." DE 30 at 11.

The court finds Plaintiff's allegations are insufficient to state a plausible Title VII hostile work environment claim. To meet the third element of the claim, Plaintiff must allege that Defendants' conduct was so severe or pervasive that it altered the conditions of Plaintiff's employment. While Plaintiff alleges that Defendants removed "substantive work" from her (and other Black female employees), excluded her from meetings, denied her requests for remote work and transfer, and disparaged her and her physician, Plaintiff does not indicate how her work conditions (or even those of other similar employees) were altered as a result; for example, she was not terminated, demoted, suspended, nor transferred to an undesirable position, nor did she suffer a denial or significant reduction in pay or benefits. Plaintiff alleges that she received a "downgraded" performance rating, but does not allege how that affected her employment or work environment in any way. Plaintiff also alleges that she received a "lower" locality pay but, again, she fails to identify the reduction and alleges nothing demonstrating that such pay change was "severe" or altered her work conditions in such a way that a reasonable person would find the work environment hostile or abusive. Moreover, Plaintiff alleges that she was "verbally attacked" by a male program manager during a meeting involving "five White men and two African American women" and that she "feared for her safety" (Compl. ¶ 115); these allegations are insufficient to

demonstrate objective unlawful hostility and Plaintiff fails to allege facts necessary for a plausible showing that she would not have experienced the verbal attack but for her race and sex.

Finally, Plaintiff asserts that she was subject to an internal investigation for misconduct, but she does not allege how her work conditions were affected, and such employer action, itself, does not constitute a hostile work environment. *See Seabrook*, 148 F.4th at 272 (finding no hostile work environment for allegations of undermining plaintiff's supervisory authority, investigating her without first informing her about the complaints against her, suspending her for fourteen days, escorting her from the building, and disclosing her suspension to others); *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (affirming dismissal of hostile environment claim when plaintiff alleged her employer investigated her unjustly).

The court overrules Plaintiff's objections to the recommendation and dismisses Count One alleging a hostile work environment for failure to state a claim.

**2. Race and Sex Discrimination**

To state a plausible indirect evidence claim for unlawful disparate treatment based on race and/or sex, a plaintiff must allege (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 815 (4th Cir. 2026) (quoting *Wannamaker-Amos v. Purem Novi Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)). Because the fourth element can be met by establishing that "similarly-situated employees outside the protected class received more favorable treatment," courts "frequently reframe the fourth element of a race discrimination claim pursuant to Title VII as 'similarly situated comparators.'" *Id.* (citations omitted).

In this case, Judge Swank found that Plaintiff fails to plausibly allege facts supporting the

third and fourth elements and recommends dismissal of Plaintiff's race and sex discrimination claims. Plaintiff contends that "she has in fact experienced tangible employment actions with economic consequences," including "favorable performance, materially adverse reductions in rating, pay, duties, and opportunities, and more favorable treatment of White and male employees doing similar work under the same management." DE 30 at 13-14. Further, Plaintiff argues that the Fourth Circuit has squarely rejected a "similarly-situated" inquiry in a Rule 12(b)(6) analysis, such as that undertaken in the M&R.

This court disagrees. First, Plaintiff has failed to allege facts demonstrating a plausibility that any "tangible" adverse employment actions taken against her were because of her race and/or sex. Plaintiff alleges she was denied requested transfers and remote work assignments, excluded from meetings, and subjected to the internal investigation, but nothing indicates that she suffered an adverse employment action as a result of this conduct.

While Plaintiff alleges that she suffered a reduction in locality pay and a "downgraded" performance rating, each of which may serve as an adverse employment action under Title VII, she provides no facts from which the court might reasonably infer Defendants took these actions because Plaintiff is (self-described) African-American and/or a female. Plaintiff contends that she and other African-American females were treated differently than their White male counterparts, who were located in Atlanta, Georgia. She alleges in her Complaint that the "majority White staff assigned to the Georgia office . . . received higher evaluations than the majority African American staff in D.C. from the same supervisors" and the "majority White staff assigned in the Georgia office with similar titles and jobs are all GS-14s while all the black females in [D.C.] are all GS-13s." Compl. ¶¶ 40, 41. The court finds that, without additional facts concerning these would-be comparators, Plaintiff allegations are insufficient to describe circumstances giving rise to an

inference of unlawful discrimination.

In *Johnson*, *supra*, the Fourth Circuit reviewed an order granting a motion to dismiss Title VII race discrimination and retaliation claims by a plaintiff alleging she was forced to resign on allegations of misconduct. 163 F.4th at 815. The court identified the elements necessary to state a plausible race discrimination claim under a "comparators" theory.[8] *Id.* at 815-16. The court instructed that "there must be 'sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Id.* at 815 (citations omitted). Thus, "while there is no bright-line rule for what makes two comparators similar for purposes of Title VII claims, courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Id.* at 815-16 (internal quotation marks and citations omitted). Applying these principles, the court evaluated thirteen alleged comparators identified by the plaintiff, who listed each comparator's race, job title, alleged misconduct, and the employer's subsequent treatment, and determined that these descriptions allowed the court to reasonably infer the comparator's "meaningful" similarities to the plaintiff. Id. at 817. The court concluded that these allegations sufficiently showed white or non-black employees, subject to the same standards, who allegedly engaged in similar conduct to the plaintiff

[8] Plaintiff cites the Fourth Circuit's opinion in *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), for the proposition that a "similarly-situated inquiry ordinarily belongs to the prima-facie and evidentiary stages, not Rule 12(b)(6)." DE 30 at 4. While the *Woods* court ruled that "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made" in a Rule 12(b)(6) analysis (*see id.* at 650-51), the court also confirmed that alleged facts concerning comparators "must support a reasonable inference that the decisionmakers were motivated by race" (*see id.* at 648).

but received disparate treatment. *Id.* at 818.

Here, unlike in *Johnson*, the Plaintiff fails to identify job titles, standards, supervisors, and qualifications, which are necessary for the court to support a reasonable inference that Plaintiff's reduced locality pay and/or lower performance ratings were imposed based on her race or sex. The court overrules Plaintiff's objections to the recommendation and dismisses Count One alleging disparate treatment based on race and/or sex for Plaintiff's failure to state a plausible claim.[9]

**B. Wage Discrimination Claims (Count Two)**

Under the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"), certain employers are proscribed from paying wages to employees of one gender, on the basis of that gender, at a rate less than that paid to employees of the other gender who are performing equal work on jobs that require equal skill, effort, and responsibility and are performed under similar working conditions. *See also Mezu v. Dolan*, 75 F. App'x 910, 912 (4th Cir. 2003). Plaintiff need not allege facts supporting all elements of a *McDonnell Douglas* prima facie case to meet Rule 8's pleading standards, but she must plead facts satisfying the elements of the cause of action created by the EPA, in compliance with *Iqbal*. *See Woods*, 855 F.3d at 647–48.

Judge Swank found that Plaintiff failed to allege facts describing herself and the comparators sufficiently to raise an inference of wage discrimination under the EPA. Plaintiff counters that descriptions of her duties are found in her allegations concerning her performance

---

[9] Plaintiff also relies on her allegation that an "ATF employee," Albert Verhyn, "testified" during her internal investigation that when the Leadership and Professional Development Division (LPDD) relocated its offices from Washington, D.C. to Georgia, several staff chose to remain in Washington, D.C. and that the D.C. "staff, mostly Black females, were targeted in an effort to make them leave so their positions could be backfilled in the Georgia office." Compl. ¶ 28. Even taking this allegation as true, the court is not moved. Verhyn is described as an employee, not a manager, and thus his knowledge of Defendants' motivations is unclear. Moreover, the motivation is described as a desire to "backfill positions" rather than to treat differently Black females.

evaluations in 2020 and 2021 (*see* Compl. ¶¶ 49-52), and that she has alleged that "predominantly White and male employees performing the same work were classified as law-enforcement employees and received higher salaries and benefits; that White Georgia staff with similar titles and jobs were GS-14s while the Black women were GS-13s; and that [she] performed a common core of tasks substantially equal to her male counterparts under similar conditions." DE 30 at 16-17.

The court is not persuaded. Because they do not identify a single male employee who performs "equal work on jobs that require equal skill, effort, and responsibility" and who performs "under similar working conditions," Plaintiff's allegations fail to allege plausible claims under the EPA and, for the same reasons listed above, under Title VII. The court overrules Plaintiff's objections to the M&R and dismisses Count Two against the Defendants.

**C. Constitutional Claims (Count Three)**

Judge Swank recommends dismissal of Plaintiff's claims alleging violations of her First and Fifth Amendment rights as an improper attempt to expand *Bivens* to a new context. Plaintiff does not lodge a proper § 636(c)(1)(C) objection to this recommendation, but "preserves the issue for further review." DE 30 at 24-25.

Upon careful review of the M&R and the record presented, and finding no clear error, the court adopts the M&R and dismisses Count Three for failure to state a plausible claim for relief.

**D. Retaliation Claims (Count Four)**

Count Four alleges claims of retaliation under Title VII and the EPA. To allege a plausible retaliation claim in the Fourth Circuit, a plaintiff must allege facts supporting a plausible inference that she suffered an adverse employment action because she engaged in activity protected by the relevant statute. *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (citing *Holloway*, 32

F.4th at 300).

Judge Swank determined that Plaintiff's allegations are insufficient to support a plausible inference that the actions alleged to have been taken by Defendants—i.e., terminating Plaintiff's employment detail, denying her access to legal benefits, reducing her pay, and subjecting her to an internal investigation (Compl. ¶¶ 192-194)—were motivated by Plaintiff's October 24, 2022 internal discrimination complaint against Defendants Lang, Brashier, and Jackson (Compl ¶¶ 91, 189, 193). Plaintiff criticizes the M&R's limitation of the alleged retaliatory time frame to the period, October 2022 to July 2023, and contends that her allegations demonstrate that she engaged in protected activity and suffered adverse actions well before and after that time. DE 30 at 18. However, Count Four of the operative pleading specifies the facts on which Plaintiff bases her retaliation claims, and expressly identifies October 24, 2022, as the date on which she engaged in protected activity, as well as lists the subsequent "adverse actions" by Defendants, concluding with the July 2023 internal investigation. Compl. ¶¶ 189-195. Notably, Plaintiff specifically alleges that "Defendants investigated Ms. Thomas because she complained on October 24, 2022 of unequal pay and benefits based on her sex and race." *Id.* ¶ 196. The court rejects Plaintiff's argument that the M&R improperly limited the scope of her retaliation claims.[10]

Plaintiff also contends that, within the retaliatory period, she suffered "a continuous sequence of intervening adverse acts by managers who were subjects or recipients of Plaintiff's

[10] At the conclusion of her Objections to the M&R, Plaintiff asserts that leave to amend, rather than dismissal, should be granted for any "pleading defects." DE 30 at 25. While the court agrees generally with this premise, litigants are not typically permitted to move for relief in briefing (*see* Fed. R. Civ. P. 7(b)), and to the extent a proper motion for leave to amend is filed, this court requires that litigants attach a proposed amended pleading to such motion (REM Prac. Prefs. & Procs. § I.B). At the time she filed her objections, Plaintiff was on notice of identified pleading defects, and she mentions nothing that might have prohibited her from filing a proper motion and proposed amended pleading at that time.

complaints." DE 30 at 19. Notably, Judge Swank found that "Plaintiff has not plausibly alleged that decisionmakers who initiated the internal investigation were aware of the EEO complaint." DE 28 at 23. Plaintiff argues that certain paragraphs between 91 and 133 of the Complaint contain "allegations support[ing] knowledge, temporal proximity for multiple acts, and a pattern of antagonism bridging any longer interval." DE 30 at 19. The court is not convinced. These paragraphs identify a number of people, in addition to the named Defendants, who allegedly treated Plaintiff "adversely," but not one is mentioned as having any relationship to or with the internal investigation against Plaintiff.[11]

Notably, Plaintiff's allegation in Count Four states: "On or around July 13, 2023, *less than a month after the investigation from her Equal Pay Act complaint started*, a retaliatory Internal investigation was filed against Ms. Thomas, purportedly because of 'lack of candor and falsification of her timecard.'" Compl. ¶ 194 (emphasis added); *see also* ¶ 118. Taking this allegation as true, the court finds that the retaliatory period could be shortened, if the court were to assume that Defendants Lang, Brashier, and/or Jackson learned of Plaintiff's EEO Complaint against them when the investigation of the EEO Complaint started in or about June 2023. However, nothing alleged in the Complaint links Defendants Lang, Brashier, or Jackson to the internal investigation or to the allegations launched against Plaintiff of "lack of candor and falsification of her timecard." In fact, according to the Complaint, it appears that Defendant Littner was Plaintiff's supervisor in 2023. *See* Compl. ¶¶ 112, 115, 117.

Judge Swank also found that the identified retaliation period of October 2022 to July 2023

---

[11] Like Judge Swank, this court assumes, for purposes of this analysis, that the internal investigation serves as a materially adverse action under Title VII and the EPA. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (an action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

is, itself, "too long to support an inference of retaliation." DE 28 at 23. As mentioned above, Plaintiff contends that multiple adverse acts by managers occurred during that period, and she asserts that such acts "created a retaliatory hostile environment," which was not considered in the M&R. DE 30 at 20. Again, the court disagrees. As set forth above, this court finds that the actions alleged by Plaintiff do not rise to the level of severity necessary to state a plausible claim of hostile work environment. The court finds Plaintiff's allegations fall short of that necessary to support a plausible inference of unlawful retaliation, overrules Plaintiff's objections to the recommendation, and dismisses Count Four.

### E. Failure to Accommodate Disability Claims (Count Five)

In Count Five, Plaintiff alleges claims under both the Rehabilitation Act and the Americans with Disabilities Act ("ADA") against Defendants, but agrees with Judge Swank that Defendants are not subject to suit under the ADA and, thus, any claim alleged under the ADA in Count Five is dismissed.

Relevant here, Section 504 of the Rehabilitation Act ("RA") provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a). The Fourth Circuit imposes the same requirements to establish liability under the RA as under the ADA. *See Neal v. Sandhills Ctr.*, 737 F. Supp. 3d 291, 295–96 (M.D.N.C. 2024) (citing *Koon v. North Carolina*, 50 F.4th 398, 403, 403 n.2 (4th Cir. 2022), which analyzed claims under both statutes simultaneously stating, "The Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same.").

To state a claim for an ADA/RA violation, a plaintiff must allege that she "(1) has a

disability; (2) was otherwise qualified to get some public program, service, or activity; and (3) was denied that program, service, or activity on the basis of [her] disability." *Id.* at 296 (quoting *Koon*, 50 F.4th at 405). A disability is "a physical or mental impairment that substantially limits one or more major life activities." *Id.* (quoting 42 U.S.C. § 12102(1)(A)). While mental impairments, like depression and anxiety, may be recognized under the ADA and/or the RA, a plaintiff still must allege that the impairment "substantially limits one or more major life activities" to plausibly allege a disability under the ADA/RA. *See id.* (quoting *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 367 (4th Cir. 2008)).

Judge Swank recommends dismissal for Plaintiff's failure to allege she was an individual with more than just a diagnosis of depression and anxiety. DE 28 at 24-25. Plaintiff contends her allegations include the fact that commuting to the D.C. office could worsen her depression and anxiety, impede timely treatment, and cause mental hardship, and that remote work would permit regular mental health treatment. DE 30 at 22. She alleges that the denials of her remote work requests caused her condition to worsen and she "experienced a panic attack requiring hospitalization." *Id.* Even taking these allegations as true, Plaintiff fails to allege facts supporting an inference that her depression and anxiety substantially limited one or more of her major life activities, as necessary to state a plausible RA claim.

To the extent that Plaintiff's argument may be construed as identifying "working" as a major life activity, Plaintiff's allegations still fail to support an inference that depression and anxiety substantially limited her ability to work. According to the Complaint, Plaintiff suffered a panic attack on August 4, 2023, which required an ambulance ride to the hospital. Compl. ¶ 123. While this is certainly serious, Plaintiff also alleges that, *the next day*, she "applied for [an] HR Development Specialist position." *Id.* ¶ 125. The Complaint mentions nothing further about

Plaintiff's panic attack or hospitalization. Moreover, Plaintiff alleges that, the following month, she requested alternative work details because, despite positive performance ratings, "she was not regularly receiving work from her supervisors." *Id.* ¶ 128; *see also* ¶ 112. These allegations do not support a plausible inference that Plaintiff's depression and anxiety substantially limited her ability to work (or to perform other major life activities).

The court overrules Plaintiff's objections to the M&R and dismisses Count Five.

**F. FMLA Interference Claims (Count Six)**

The Family Medical Leave Act ("FMLA") provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Boone v. Bd. of Governors of Univ. of N. Carolina*, 858 F. App'x 622, 624 (4th Cir. 2021) (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015)).

Relevant here, the FMLA entitles employees to take leave for medical reasons and for the care of a child, spouse, or parent who has a serious health condition. *Quintana v. City of Alexandria*, 692 F. App'x 122, 125 (4th Cir. 2017) (citing 29 U.S.C. § 2601(b)(2)). "The FMLA provides covered employees with the substantive right to twelve workweeks of leave during any 12-month period, for family and health-related issues, as well as a right 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to 'an equivalent position.'" *Id.* (quoting 29 U.S.C. §§ 2612(a)(1) and 2614(a)(1)(A)–(B)).

Judge Swank recommends dismissal of Count Six for the Plaintiff's failure to allege plausibly that Defendants "interfered" with a benefit—in this case, sick leave. DE 28 at 25-26.

Plaintiff argues that the M&R ignores her allegations in ¶¶ 107, 109-110 and, alternatively, that the court should grant leave to amend, rather than dismissal, if it finds the claim alleges retaliation rather than interference. DE 30 at 23-24.

First, the court is puzzled by Plaintiff's argument; the M&R cites directly to the paragraphs identified by Plaintiff and concludes that while there was an initial denial for lack of documentation supporting the 160 hours of leave requested, the Plaintiff was found to qualify for FMLA leave *the next day* and, according to Plaintiff's allegations, she was on such leave from February 10, 2023 to March 27, 2023. *See* Compl. ¶¶ 107, 109-110. Notably, Plaintiff alleges she "used 44 hours of annual leave before being permitted to use FMLA sick leave starting on February 21, 2023." *Id.* ¶ 110. However, this does not, itself, demonstrate FMLA interference; employees who have insufficient accrued sick leave are typically permitted to use annual leave during an FMLA approved absence. To the extent Plaintiff alleges she was "forced" to use her annual leave before she became qualified for FMLA sick leave, she fails to allege that upon her qualification, any request for substitution of her sick leave for the annual leave taken was denied. The court finds that nothing in these allegations raises a plausible inference of FMLA interference.

Plaintiff argues that her allegations, including those in Count Six (¶¶ 215-219), support a plausible FMLA *retaliation* claim. To state such claim, the Plaintiff must allege facts supporting a plausible inference that she suffered a materially adverse action because she engaged in conduct protected by the statute. *See Quintana*, 692 F. App'x at 126. Here, requesting FMLA leave is an activity protected by the statute, and Plaintiff made such request to Defendant Littner on February 9, 2023. Compl. ¶¶ 107, 109. Plaintiff alleges, "In retaliation, Ms. Thomas repeatedly received denials for her requests and appeals for remote work, telework, reasonable accommodations, hardship placements and alternative work details" and "escalated to a retaliatory Internal

investigation against Ms. Thomas [], claiming 'lack of candor and falsification of her timecard.'" *Id.* ¶¶ 216, 218. However, no materially adverse action alleged to have been taken after February 9, 2023, and leading up to the internal investigation in July 2023, is attributed to Mr. Littner (*see id.* ¶¶ 111-120), and the court has already determined that these actions, considered together, do not rise to the level of "severe," as necessary to constitute a hostile work environment. Thus, Plaintiff's request for leave to amend the Complaint to allege a retaliation claim, even if properly presented, would be futile.

The court overrules Plaintiff's objections and dismisses Count Six for Plaintiff's failure to state a plausible claim for relief.

**V. Conclusion**

In sum, Plaintiff's allegations set forth in the Complaint are insufficient to state plausible claims under Title VII, the EPA, the ADA, the RA, the FMLA, and the First and Fifth Amendments to the U.S. Constitution, and any attempts to amend the pleading through briefing is improper.

Accordingly, for the reasons set forth herein, the court overrules Plaintiff's objections, adopts the recommendation, DENIES Defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3), and GRANTS Defendants' motion to dismiss all claims pursuant to Rule 12(b)(6) [DE 12]. The Clerk of Court is directed to close this case.

SO ORDERED this 19th day of October, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE